379 So.2d 163 (1980)
Michael FERGUSON, Appellant,
v.
The STATE of Florida, Appellee.
No. 79-272.
District Court of Appeal of Florida, Third District.
January 22, 1980.
*164 Weiner, Robbins & Tunkey and Frederick S. Robbins, Miami, for appellant.
Jim Smith, Atty. Gen., and James H. Greason, Asst. Atty. Gen., for appellee.
Before HENDRY and SCHWARTZ, JJ., and VANN, HAROLD (Ret.), Associate Judge.
HENDRY, Judge.
The major issues presented by this appeal are whether there was sufficient evidence introduced at trial by the prosecution to support the convictions of the defendant/appellant on the charges of second degree murder and unlawful possession of a firearm by a convicted felon.
The record reveals that Ferguson and a male companion were customers at a bar/disco establishment in the early morning hours of October 29, 1977. Shortly after they arrived, a dispute arose with the "bouncer" at the bar regarding the defendant's lack of proper identification documents and the return of the admission charge to the upstairs discotheque. The bouncer escorted the men outside the bar and a violent fight broke out between the defendant and the bouncer; ultimately, the defendant suffered a gunshot wound in the mouth, and the bouncer was shot in the neck and died. At trial, an officer of the City of Miami Police Department, Identification Section, testified that a knife was found on the person of the deceased. The medical examiner assigned to the case testified that the wound to the neck was the cause of death; that the victim was six feet, two inches tall and weighed over two hundred and fifty pounds; that there were powder burns on the victim's neck, indicating that he was shot at close range; that the powder burn evidence was consistent with the statements made by the defendant and his companion that Ferguson was in close contact with the deceased while struggling over a gun. The testimony elicited from other employees of the bar was corroborative of the recitation of events as given by defendant and his companion, covering the time they were in the bar to the point when they were escorted outside by the bouncer. As to the actual incident directly leading to the death of the bouncer, which transpired outside of the confines of the bar, there were no witnesses to corroborate or impeach the testimony of the defendant and that of his companion, which were essentially the same. They both stated that the deceased had a gun handle protruding from his trouser pocket and that once the three of them were outside the bouncer started poking at the defendant's face, grabbed him around the neck, pushed him to the sidewalk and began to choke him; that during the struggle, the bouncer's gun fell out of his trouser pocket; that the bouncer retrieved the gun, pointed it at the defendant while they were still lying on the cement; that they struggled over it, and the bouncer shot the defendant in the mouth; that the defendant grabbed for the gun, which was still in the hand of the deceased. The defendant stated that the bouncer's other hand was still on the defendant's neck; that in the struggle the defendant turned the deceased's hand with the gun in it toward the deceased and pulled the trigger a number of times. The defendant testified that he had not had any intention to kill the bouncer; that he was not aiming for any part of the decedent's body; and that he "just wanted to get away from him." The defendant testified that after the incident he picked up the gun and ran. The employees, who were inside the building, testified that when they heard the shots they looked out and saw the defendant running away from the scene with blood splattered over him, they also saw the companion walking away. The defendant was apprehended shortly thereafter by police officers, who testified that upon arriving at the scene the deceased was lying on the ground and a black man was running *165 off; that when the defendant was apprehended he was bleeding from a wound in the mouth; and that a gun was found near the defendant.
Appellant points out that in the prosecutor's closing argument he stated that "the state had to prove its case through circumstantial evidence," and the trial judge instructed the jury that "if the circumstances are susceptible of two reasonable constructions, one indicating guilt and the other innocence, you must accept that construction indicating innocence." We must agree with the appellant that because of the fact that the state had no witnesses to testify about the actual shooting incident, since it presented no evidence whatsoever to contradict the only two eyewitnesses' (the defendant and his companion) version of what occurred, and the defense's version is a clearly reasonable construction of the events indicating innocence, we cannot uphold the conviction on the charge of second degree murder. See McArthur v. State, 351 So.2d 972 (Fla. 1977); Driggers v. State, 164 So.2d 200 (Fla. 1977); Davis v. State, 90 So.2d 629 (Fla. 1956); Mayo v. State, 71 So.2d 899 (Fla. 1954), and Wright v. State, 348 So.2d 26 (Fla. 1st DCA 1977). The defendant's testimony of the occurrence is consistent with the theory of self-defense, even though the circumstantial evidence presented by the prosecution may suggest a possibility of guilt. The court in McArthur, supra, stated, with regard to circumstantial evidence in a murder case, at 977 and 978:
"Based on the non-scientific conflicting evidence, we cannot accept the state's view that all reasonable hypotheses of innocence are incompatible with the record."
* * * * * *
"Both sides introduced fairly complex scientific evidence to explain or defeat appellant's hypothesis of an accidental shooting."
* * * * * *
"From the totality of scientific and non-scientific evidence at appellant's trial, we are forced to conclude that the prosecution's proof of Mr. McArthur's intentional murder was not inconsistent with his accidental death. The jury could reasonably have concluded, and obviously did conclude, that it was more likely that appellant murdered her husband than that she did not. Yet `even though the circumstantial evidence is sufficient to suggest a probability of guilt, it is not thereby adequate to support a conviction if it is likewise consistent with a reasonable hypothesis of innocence.' On this record appellant's innocence has not been disproved .. . The state simply did not carry its burden of proof. Our jurisprudence and the justice of the cause require that the conviction entered below be reversed... ."
In the cause sub judice, we must conclude that the state did not carry its burden of proof; clearly, as a matter of law, there was insufficient evidence of the appellant's guilt to support his conviction for second degree murder. The evidence contained in this record, consisting of witness testimony from the appellant's companion, the bar employees, police officers, and the medical examiner is reasonably consistent with the version of events which appellant has conveyed.
As to the Ferguson's conviction for possession of a firearm by a convicted felon, we must also reverse. The state failed to present what is required to sufficiently prove the prior conviction. See, Dowling v. State, 210 So.2d 280 (Fla. 2d DCA 1968) [the necessary elements to be proved being the information, the plea of the accused, the jurisdiction of the court, the verdict of the jury, and the judgment and sentence of the court], and State v. Dixon, 193 So.2d 62 (Fla. 2d DCA 1966) [the "proof must be technical and specific."]
Reversed and remanded with directions to discharge the defendant as to the judgments and sentences herein appealed.