577 So.2d 650 (1991)
Party Ann ANDREWS, Appellant,
v.
STATE of Florida, Appellee.
No. 89-02395.
District Court of Appeal of Florida, First District.
March 28, 1991.
Rehearing Denied May 2, 1991.
*651 Barbara M. Linthicum, Public Defender, and David P. Gauldin, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Cynthia Shaw, Asst. Atty. Gen., Tallahassee, for appellee.
BOOTH, Judge.
This cause is before us on appeal from a judgment and sentence for second-degree murder. The primary issues are (1) whether the evidence was sufficient to sustain appellant's conviction for second-degree murder, and/or (2) whether appellant was entitled to a judgment of acquittal on the basis of her claim that she acted in self-defense when she killed her husband Reginald.
At the time of his death in 1988, Reginald had been married to appellant for four years. After the parties' married, Reginald began selling off household appliances, furniture, and appellant's belongings to support his crack cocaine addiction. He also began beating appellant. During the course of the marriage, Reginald regularly beat appellant as frequently as every other weekend, punching her with his fists or stomping on her with his shoes. Several witnesses testified to seeing Reginald punch, beat, or stomp appellant. Appellant's sister testified that she had personally seen Reginald punch or stomp appellant on 20 occasions and try to run her over with his truck. There was evidence that during the course of the marriage, appellant sought treatment at the emergency room countless numbers of times and was hospitalized on three or four occasions as a result of the beatings by Reginald. After a particularly severe beating in November of 1985, appellant attempted suicide. The hospital records which followed this suicide attempt were admitted into evidence.[1]
It was against this background of extreme "domestic" violence that the events giving rise to the last, fatal encounter occurred, late on October 30 and in the early morning hours of October 31, 1988. On October 30, 1988, appellant, her two nieces, and a female acquaintance gathered in a Pensacola lounge. The women had been on a car trip to Alabama and were drinking. Subsequently, Reginald arrived at the parking lot of the lounge in the company of two women. An argument ensued between him and appellant, which resulted in his hitting appellant with his fists in the face and side of the head several times, knocking her down. Reginald started choking appellant, and she burned his arm with her cigarette. When one of appellant's nieces tried to pull him off appellant, he slapped the niece hard. Reginald wandered off the premises. Some time thereafter, appellant left, going to her sister's house, and then taking a taxi home alone.
Appellant testified that she was afraid Reginald would beat her again and hoped to get into the house without waking him. However, as she approached the house, she saw Reginald watching her from a window. After some hesitation, she walked around to the back to wait for him to fall asleep. But then, she heard the front door open and close, and Reginald came into the back yard and said to appellant, "You're not with your nieces now. What are you going to do now?" He then said, "I'm through. This is it. I'm through with it." Hearing this, appellant quickly ran to a neighboring yard. There she waited, hoping that Reginald would calm down. Finally, she returned to her back yard and, according to her testimony, entered the house through the rear door.
By this time, Reginald had gone back inside the house. He approached appellant and began what appeared to her to be an amorous advance. He partially undressed her and then suddenly became angry and grabbed her violently. Appellant broke from his grip and, only partially clothed, ran from the house through the front door. Reginald pursued her and caught her in an area of the yard near his truck. There, he *652 began to choke her. At some point, he took out his knife, gave it to her, saying to appellant, "You can use that if you want to." Either Reginald or appellant put the knife on the truck bed rail, and at some point it fell to the ground. Reginald hit appellant, knocking her down next to the truck. Reginald followed her and began again to choke her. Appellant testified she thought Reginald would kill her. She grabbed the knife and stabbed Reginald once. The single wound, one-half inch long, fatally pierced Reginald's aorta, and he died within minutes. Meanwhile, appellant ran from her yard and hid under a tree on the adjoining property. Subsequently, she went to the house of her sister. The knife was never recovered.
In sum, appellant adduced evidence that Reginald had beaten and injured her on many occasions in the past and had beaten her on the evening of his death. She testified to her fear of another beating and how she tried to hide. When Reginald caught her in the yard with a knife in his possession and began choking her, she was afraid he was going to be kill her. At that time, she reached for the knife that had fallen to the ground and stabbed him in self-defense.
Appellant was convicted of murder in the second degree. In order to sustain appellant's conviction, the State had the burden of proving beyond a reasonable doubt that appellant unlawfully killed Reginald by an act imminently dangerous and evincing a depraved mind regardless of his life, although without any premeditated design to effect his death. § 782.04, Fla. Stat. (1987). We have no difficulty concluding that the State's evidence was insufficient to have allowed the jury to return a verdict of second-degree murder. We therefore reverse as to the first issue.
The next issue is whether there was evidence sufficient to overcome appellant's defense of self-defense. While appellant had the burden of presenting evidence that she acted in self-defense, the burden of proving guilt beyond a reasonable doubt never shifted from the State. Bolin v. State, 297 So.2d 317, 319 (Fla. 3d DCA 1974), cert. denied, 304 So.2d 452 (Fla. 1974). Stated another way, the State had to prove beyond a reasonable doubt that appellant did not act in self-defense when she killed Reginald. State v. Bobbitt, 389 So.2d 1094, 1098 (Fla. 1st DCA 1980), quashed on other grounds, 415 So.2d 724 (Fla. 1982), opinion on remand, 420 So.2d 362, 363 (Fla. 1st DCA 1982); Diaz v. State, 387 So.2d 978 (Fla. 3d DCA 1980); Ferguson v. State, 379 So.2d 163 (Fla. 3d DCA 1980); McKnight v. State, 341 So.2d 261 (Fla. 3d DCA 1977); cert. denied, 348 So.2d 953 (Fla. 1977); Bacom v. State, 317 So.2d 148 (Fla. 1st DCA 1975).
In Diaz, supra at 980, wherein the defendant was the only witness to the killing, the court ruled:
The defendant's direct testimony concerning the victim's threats and his menacing approach together with the defendant's assertion that he was in fear of his life made out a prima facie case of self defense under Section 776.012, Florida Statutes (1977). The state presented no evidence to rebut the defendant's direct testimony that he acted in self defense nor was it able to diminish his testimony on cross-examination. Under these circumstances, only those inferences properly arising out of the state's testimony in chief could be considered to rebut the defendant's assertion of self defense. In this posture, that evidence, circumstantial in its entirety, was woefully inadequate to rebut the direct testimony that the defendant committed homicide in self defense.
Accord, Ferguson, supra at 165.
The State's evidence of guilt fell short of its burden of proof, and appellant's motion for judgment of acquittal should have been granted. The testimony of Deputy Wasdin that he did not see any footprints near appellant's truck other than his own and those of the other deputy, is not inconsistent with appellant's testimony that a struggle took place.[2] In fact, Deputy *653 Wasdin found no footprints anywhere, yet the parties had admittedly been in the yard. Likewise, Deputy Wasdin's testimony that he "did not recall" seeing physical injuries to appellant at the time of her arrest is not probative that no physical struggle occurred.[3] That Deputy Wasdin observed cobwebs and draft-blocking material at the back door of appellant's home, indicating the door may not have been used recently, is not a significant contradiction since whether appellant went in the back door to the house prior to the struggle in the yard is not shown to be material. These and other inconsistencies relied on by the State are immaterial in that they do not substantially contradict appellant's claim of self-defense. See, e.g., State v. Law, 559 So.2d 187, 189 (Fla. 1989).
In summary, the State's evidence was insufficient to allow a jury to conclude that, beyond a reasonable doubt, appellant did not act in self-defense. We therefore reverse the instant judgment and sentence, and remand this cause with directions to discharge appellant.
SMITH, J., and WENTWORTH, Senior Judge, concur.
NOTES
[1] Appellant's counsel did not seek to establish "spouse abuse syndrome." The court excised parts of hospital records which indicated appellant was the victim of spouse abuse. Those evidentiary rulings are not issues on appeal. The State, on the other hand, did not contest appellant's evidence of abuse.
[2] Photographs taken November 1, more than a day after the homicide and after a rain storm, were admitted into evidence as showing the scene.
[3] Hospital records show that appellant is a black woman. There was no evidence that, given appellant's skin type and coloration, bruises or other similar injuries would have been readily visible even had Deputy Wasdin specifically looked for them.