643 So.2d 94 (1994)
Stephan LIFRED, Appellant,
v.
STATE of Florida, Appellee.
No. 92-2357.
District Court of Appeal of Florida, Fourth District.
October 5, 1994.
William K. DeBraal of Law Offices of Norman A. Green, Vero Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Sarah B. Mayer, Asst. Atty. Gen., West Palm Beach, for appellee.
EN BANC
PARIENTE, Judge.
This is the second sentencing appeal for appellant, Stephan Lifred (defendant), and the second time he has attacked the imposition of consecutive three year mandatory minimum terms pursuant to section 775.087(2), Florida Statutes (Supp. 1990) for crimes involving a firearm. Both defendant's original sentence and re-sentence include stacking of a three year mandatory minimum *95 for attempted murder with a firearm of one victim with a three year mandatory minimum for aggravated battery with a firearm of a second victim.
The issue we confront is whether the trial court has discretion to impose consecutive mandatory minimum terms (mandatory minimums) for the crimes of attempted murder with a firearm of one victim and aggravated battery with a firearm of a second victim, occurring during the course of an armed robbery of both victims, where a firearm has been discharged twice resulting in injury to two victims. We hold that the trial court possesses this discretion under section 775.087(2), and properly exercised its discretion under the circumstances of this case because the discharges of the firearm constituted separate and distinct acts against separate and distinct victims.
Defendant, together with codefendants Demetrius Solomon and Levi Rahming, all of whom carried guns, approached several individuals standing outside a record store. Defendant pointed a gun directly at the first victim, Caspah Morris (Morris). As Morris reached into his pocket, apparently to hand over his money, defendant shot Morris in the leg. At this point, persons standing in the vicinity, including the second victim, Everald Henry (Henry), began running from the area. While running, Henry heard another shot and then heard Morris calling for help. In an effort to save Morris, Henry tried to divert the robbers' attention by yelling "task force," a reference to a drug enforcement agency. Henry then fled and was shot as he attempted to enter the record store. Thereafter, Morris was shot in the back four times as he also tried to flee into the store.
Defendant and his codefendants were all convicted of attempted second degree murder with a firearm of Morris (count I), aggravated battery with a firearm of Henry (count II), attempted robbery with a firearm of Morris (count III) and attempted robbery with a firearm of Henry (count IV). Although defendant received separate sentences with three year mandatory minimums for each count, all sentences were concurrent and all mandatory minimums were concurrent except for the consecutive three year mandatory minimum on count I for attempted second degree murder with a firearm of Morris and the three year mandatory minimum on Count II for aggravated battery with a firearm of Henry.
In defendant's first appeal, the propriety of imposing consecutive mandatory minimums was briefed, argued and implicitly rejected. Lifhred v. State, 598 So.2d 335 (Fla. 4th DCA 1992).[1] Defendant Lifred (also spelled Lifhred) asks us to revisit this issue because one of his codefendants, Levi Rahming, successfully argued on his second sentencing appeal that the imposition of consecutive mandatory minimums, pursuant to Palmer v. State, 438 So.2d 1 (Fla. 1983), was improper "because appellant's offenses occurred during a single, continuous criminal episode." Rahming v. State, 616 So.2d 1232 (Fla. 4th DCA 1993). (Rahming II).[2]
Although we implicitly approved of the consecutive mandatory minimums in defendant's first appeal, we are not precluded from revisiting this issue if the imposition of consecutive mandatory minimums constitutes an illegal sentence. See Bedford v. State, 633 So.2d 13 (Fla. 1994). In this case, because a subsequent panel of this court in Rahming II found that portion of codefendant Rahming's sentence imposing a consecutive mandatory minimum term to be unlawful, the circumstances here are particularly compelling for a *96 second review. See Smith v. State, 487 So.2d 1088 (Fla. 5th DCA 1986).
We start with the proposition that pursuant to section 775.021(4), Florida Statutes (1989), a trial court has discretion to impose separate sentences, either concurrently or consecutively, for each separate criminal offense arising out of a single criminal transaction or episode.[3] Defendant does not attack his conviction and separate sentence for each of the four crimes arising out of this one criminal transaction or episode.
We next consider the limitation on a trial court's authority to impose consecutive three year mandatory minimums for crimes involving use of a firearm. The supreme court, first discussing this issue in Palmer v. State, 438 So.2d 1 (Fla. 1983), declined to read section 775.021(4) in pari materia with section 775.087(2)[4] and thus, refused to construe section 775.021(4) as providing unlimited authority to impose consecutive mandatory minimums for multiple crimes within one criminal episode.
While the supreme court upheld the thirteen consecutive sentences for thirteen separate armed robberies resulting in a 975 year term pursuant to section 775.021(4), it rejected the stacking of consecutive mandatory minimums for each of the thirteen robbery counts, totalling thirty-nine years, where the robberies had taken place in the same manner and at one time and place. The majority explained that its holding did not "prohibit consecutive mandatory minimum sentences arising from separate incidents occurring at separate times and places." Id. 438 So.2d at 4.
The supreme court's decision must be analyzed in light of the unique facts in Palmer. The armed robbery occurred in a funeral home when the defendant brandished a pistol and ordered multiple mourners to throw their money and valuables on the floor.
Although section 775.087(2) does not contain any explicit language restricting trial courts from imposing consecutive mandatory minimums for separate criminal offenses involving the use of a firearm, Justice McDonald, writing for a divided court, held the legislature had not intended by this statutory enactment to vest trial courts with authority to deny a defendant eligibility for parole for a period greater than three calendar years for crimes arising from the use of a firearm in one criminal episode. Id. 438 So.2d at 3. The effect of imposing the thirteen consecutive mandatory minimums in Palmer was to sentence the defendant to thirty-nine years without eligibility for parole. The supreme court determined that this result would limit the exclusive power of the executive branch to grant paroles or conditional releases under sentences for crimes, which is impermissible absent express legislative authority.[5]Id.
*97 In his dissent, Justice Alderman disagreed that there was any evidence that the legislature intended to limit a trial court's discretion to impose consecutive mandatory minimums for crimes wherein separate sentences were proper pursuant to section 775.087(2):
Had Palmer committed thirteen separate robberies at thirteen separate houses, there would be no question that he could receive thirteen separate, consecutive, three-year mandatory minimum sentences. He should not be entitled to less than this merely because he committed the thirteen separate robberies in the same criminal episode. Certainly a defendant who commits multiple crimes should be punished more severely than one who commits only one crime. The legislature did not intend that crime be "cheaper by the dozen."
Id. 438 So.2d at 4.
The supreme court in Thomas v. State, 487 So.2d 1043, 1044 (Fla. 1986), again interpreted section 775.087(2), distinguishing Palmer based on the presence in Thomas of "two separate and distinct criminal offenses involving two separate and distinct victims." We find Thomas, construing the precise statute at issue in this appeal, to control.
In Thomas, the defendant was convicted of attempted first-degree murder of a woman and aggravated assault of her son with consecutive mandatory minimum sentences for each offense imposed because of the defendant's possession of a firearm. The defendant shot the woman four times in the bedroom of her trailer. The woman then fled outside to her yard, where she was followed by the defendant who shot at her again. When the son attempted to aid his mother, the defendant fired at him; thereafter, the defendant shot the woman two more times.
Without quoting any specific statutory language or legislative history, the supreme court determined that under the facts in Thomas, it believed "the legislature intended that the trial court have discretion to impose consecutively or concurrently the mandatory minimum time served." 487 So.2d at 1044. The court analogized the factual circumstances to its decision in State v. Enmund, 476 So.2d 165 (Fla. 1985) where it approved of consecutive twenty-five year mandatory minimums for separate and distinct homicides arising from a robbery. While recognizing that Enmund involved section 775.082(1), Florida Statutes, which authorizes twenty-five year mandatory minimums for capital felonies, the supreme court concluded that the intent behind both section 775.082(1) and section 775.087(2) is to vest trial courts with broad discretion to impose mandatory minimums concurrently or consecutively for separate and distinct offenses involving multiple victims. Thomas, 487 So.2d at 1044.
Thomas can be read broadly for the proposition that attempted murder of one victim and aggravated assault or battery of a second victim, or two separate shootings of two separate victims, constitute two separate and distinct offenses justifying the imposition of consecutive mandatory minimums. However, our sister courts have interpreted Thomas to require that for crimes against multiple victims to be separate and distinct, the crimes must be separated by time and place, and not solely by the distinct act of discharging a firearm against more than one victim, even though Thomas did not reiterate the separate time and place language of Palmer. See Gates v. State, 633 So.2d 1158, (Fla. 1st DCA 1994); Woods v. State, 615 So.2d 197 (Fla. 1st DCA 1993); Gardner v. State, 515 So.2d 408 (Fla. 1st DCA 1987); Young v. State, 631 So.2d 372 (Fla. 2d DCA 1994); Preyer v. State, 575 So.2d 748 (Fla. 5th DCA 1991).
We agree that in the case of a single victim of multiple crimes arising out of single criminal episode, the analysis appropriately turns on whether offenses subsequent to the initial offense are sufficiently separated by time and place, as well as by nature of the crimes and manner of commission. In *98 that case, the determination is whether each crime represents a separate and additional violation of the victim's rights, even if the entire criminal event arose out of a single criminal episode. Murray v. State, 491 So.2d 1120, 1124 (Fla. 1986); see, e.g., Cox v. State, 605 So.2d 978 (Fla. 4th DCA 1992). However, in the case of multiple discharges of a firearm at multiple victims, there are, by definition, separate violations of each victim's rights.
An analysis barring imposition of stacked mandatory minimums, merely because the crimes against multiple victims are not separated by time and place, can lead to distinctions not fostering any stated legislative policy regarding restrictions on eligibility for parole. For example, we cannot see how a criminal who shoots three victims in the course of an armed robbery while the victims remain in the same location should be punished less severely than a criminal who shoots one victim three times at three separate locations. Compare Woods and Kelly v. State, 552 So.2d 206 (Fla. 5th DCA 1989), rev. denied, 563 So.2d 632 (Fla. 5th DCA 1990) with Young and Gardner.
Relying primarily upon our interpretation of Thomas, we hold that in the case of multiple victims, the primary factor triggering the imposition of consecutive mandatory minimums is whether the firearm has been discharged more than once to shoot those victims. An analysis of the nature of the crime, manner of commission, time and place may assist in the inquiry of whether qualitatively separate and distinct criminal acts occurred; but with discharges of the firearm to injure multiple victims, separation of time or place should not be dispositive.
In the case of armed robberies of multiple victims, as in Palmer, the firearm is used simultaneously and in the same manner to rob more than one person. However, discharge of a firearm in the course of an armed robbery changes the nature of the crime and manner of commission. With each successive discharge of the firearm at each additional victim, the firearm is being used separately and distinctly, and in a different manner.
We do not believe that the legislature, in enacting section 775.087(2), intended to restrict the sentence that a trial court may impose on a defendant such as Lifred to a mandatory minimum of three years for each victim he injured or attempted to kill, rather than two mandatory minimums of three years as ordered in this case. This analysis is consistent with the reasoning of Palmer, Thomas and Murray, which all address section 775.087(2). It also comports with the supreme court's discussion of the Palmer rationale in Downs v. State, 616 So.2d 444 (Fla. 1993). There, Justice McDonald, the author of Palmer, explained that:
Palmer robbed thirteen people simultaneously in a funeral home... .
....
In both Palmer and McGouirk the minimum mandatory sentences addressed the same evils, using a firearm to commit simultaneous crimes in Palmer and using a destructive device ... in McGouirk ....
When the same crime is committed in a nonsimultaneous manner or when different crimes are committed in the same episode, minimum mandatory sentences can be consecutive... .
Downs, 616 So.2d at 445.[6]
We turn then to an analysis of time, place, nature of crime and manner of commission in this case. The state argues here that the two shootings are sufficiently separated by time. Defendant argues that the shootings occurred too close in time and with no separation in location to trigger consecutive mandatory minimums. We have reviewed the transcript extensively to determine how much time elapsed between each shooting incident and we discern no reliable gauge to determine the time sequence. In this case, examination of the victims centered on the crucial issue of identification and not on elapsed time between the shootings.
Similarly, the testimony does not provide us with a clear picture of location of each of the shootings. The record reflects, however, that the shooting of Henry took place at a *99 different location from the initial shooting of Morris. Although Henry was still within the general vicinity outside the record store, he was attempting to enter the store at the time he was shot. If Morris had been shot outside the store and Henry shot after fleeing into the store, rather than as he was poised to enter the store, a separation of place would have existed. However, the quality of the criminal acts  two distinct discharges of a firearm against separate victims during a robbery  would be virtually indistinguishable.
Under the factual circumstances of this case, the trial court properly imposed consecutive mandatory minimums for the crimes of attempted murder and aggravated battery. The fact that the firearm was used not only to commit the armed robberies but was also discharged at two distinct victims located in different places (albeit in the same general vicinity) with at least some temporal break, constitutes two separate and distinct criminal acts against two separate and distinct victims as contemplated in Thomas. Even without a significant temporal break or significant change in location, the nature of the crimes and manner of commission justifies stacking. We need not decide whether, even if the discharges of the firearm were seconds apart as in Gardner, or in virtually the same location as in Young, the discharges of the firearm at two victims would alone justify exercise of the trial court's discretion. We believe, however, this result would be consistent with legislative intent and supreme court precedent.
Accordingly, we recede from Rahming II in which we disapproved of consecutive mandatory minimums for codefendant Rahming under the identical factual circumstances. We reject defendant's second appeal of his sentence as we do not find the imposition of consecutive mandatory minimums constitutes an illegal sentence. The fact that codefendant Rahming may have benefitted by his attorney's nondisclosure of the previously decided Lifhred case, in which we implicitly approved of stacking of the mandatory minimums, is a windfall for Rahming, but one that cannot benefit defendant.[7] Although not the basis of our decision, we note the record establishes that Rahming, although present, did not shoot or threaten either victim with the gun. We further note that codefendant Solomon did not challenge the legality of his sentence on appeal. See Solomon v. State, 591 So.2d 640 (Fla. 4th DCA 1991).
The state concedes that a scrivener's error was made in this case where defendant's written sentence incorrectly reflects that the mandatory minimum terms in counts III and IV were consecutive, rather than concurrent to count II. Therefore, remand is proper solely to correct this ministerial error. However, defendant need not be present for such correction.
*100 DELL, C.J., and HERSEY, GLICKSTEIN, GUNTHER, STONE, WARNER, POLEN, FARMER, KLEIN and STEVENSON, JJ., concur.
NOTES
[1] In defendant's first appeal, this court considered three points relating to his sentence (use of a legal constraint multiplier, imposition of consecutive mandatory minimums and scoring of prior offenses), but found the trial court erred only through its use of legal constraint multipliers in accordance with Flowers v. State, 586 So.2d 1058 (Fla. 1991).
[2] In his first appeal, codefendant Rahming's conviction and sentence were affirmed by this court, see Rahming v. State, 579 So.2d 925 (Fla. 4th DCA 1991), but the sentence was subsequently quashed by the Florida Supreme Court pursuant to Flowers. See Rahming v. State, 592 So.2d 678 (Fla. 1992). Codefendant Rahming filed a second appeal after resentencing, raising for the first time the legality of the consecutive mandatory minimums. This court issued its opinion in Rahming v. State, 616 So.2d 1232 (Fla. 4th DCA 1993), subsequent to defendant's first appeal.
[3] Section 775.021(4), Fla. Stat. (1989) states as follows:

(4)(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.
(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent... .
(Emphasis added).
[4] Section 775.087(2), Fla. Stat. (Supp. 1990) states, in pertinent part, as follows:

(2)(a) Any person who is convicted of:
1. Any murder, sexual battery, robbery, burglary, arson, aggravated assault, aggravated battery, kidnapping, escape, breaking and entering with intent to commit a felony, ... or any attempt to commit the aforementioned crimes; ...
....
and who had in his possession a "firearm" ... shall be sentenced to a minimum term of imprisonment of 3 calendar years.
(Emphasis added).
[5] The Palmer rationale, which distinguishes between statutes imposing minimum penalties for crimes and statutes imposing enhancement of penalties, has been extended to limit circumstances where consecutive mandatory minimums can be imposed for habitual violent offenders pursuant to section 775.084(4)(b), Florida Statutes (Supp. 1988). Daniels v. State, 595 So.2d 952 (Fla. 1992). Distinct from what the supreme court has termed enhancement statutes, such as section 775.087(2) and section 775.084(4)(b), are statutes where the minimum penalty for the crime is explicitly set forth by statute such as the 25 year mandatory minimum for capital felonies. See § 775.082(1), Fla. Stat. (1993). Therefore, the supreme court has held that under section 775.082(1), a court has discretion to impose concurrent or consecutive 25 year mandatory minimums for capital felonies because they are not deemed enhancements. See State v. Boatwright, 559 So.2d 210 (Fla. 1990); State v. Enmund, 476 So.2d 165 (Fla. 1985); Newton v. State, 603 So.2d 558 (Fla. 4th DCA 1992).
[6] In McGouirk v. State, 493 So.2d 1016 (Fla. 1986), a bomb placed under a house by the defendant exploded and simultaneously injured two occupants of the house.
[7] Before Rahming II was decided, the attack on stacking of mandatory minimums had already been rejected by this court in defendant's appeal under identical factual circumstances. See Lifhred, 598 So.2d at 335. There is no question that codefendant Rahming's private attorney should have advised this court of this fact. Codefendant Rahming's appellate attorney in Rahming II was also defendant's appellate attorney in defendant's first appeal and therefore had direct knowledge of the outcome of the appeal. We note that defendant has a different private attorney in this appeal and our remarks are not directed against him.

Disclosure was mandated by our internal procedure regarding Notice of Related Cases which provides, in relevant part:
In criminal cases where multiple defendants participated in a joint trial, the parties shall notify the court of any other appeals, whether pending or already concluded from the same trial.
Disclosure was also mandated by rule 4-3.3 of the Florida Bar Rules of Professional Conduct which reads, in pertinent part, as follows:
(a) False evidence; Duty to Disclose. A lawyer shall not knowingly:
....
(3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel.
Clearly, the Attorney General's office in Rahming should also have made us aware of Lifhred by filing a Notice of Related Cases or Notice of Supplemental Authority after Lifhred was decided. This failure must have been inadvertent, because the Lifhred decision supported the state's position and implicitly rejected defendant's argument attacking stacking. We cannot, however, excuse the private attorney who was also the appellate attorney for defendant and for the third codefendant Demetrius Solomon.