693 So.2d 990 (1996)
Larry CHRISTIAN, Appellant,
v.
STATE of Florida, Appellee.
No. 95-67.
District Court of Appeal of Florida, First District.
August 15, 1996.
*991 Nancy A. Daniels, Public Defender, and Kathleen Stover, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General, and Giselle Lylen Rivera, Assistant Attorney General, Tallahassee, for Appellee.
JOANOS, Justice.
Appellant, Larry Lee Christian, appeals his conviction of the crime of second-degree murder, and the consecutive mandatory minimum firearm sentences imposed in connection with offenses committed during the same criminal episode. The issues presented for review are: (1) the legal sufficiency of the evidence to sustain the conviction of seconddegree murder, (2) the limitation of expert testimony as to appellant's state of mind during the relevant time period, and (3) the imposition of consecutive mandatory minimum firearm sentences. We affirm in part and reverse in part.
The charges here at issue arose in the context of an altercation at the Inferno Club in Perry, Florida, on the evening of February 14, 1994. Appellant, then aged sixteen, accompanied his twenty-year-old brother, Wesley, to the club. While appellant was dancing, appellant's brother Wesley and victim Chad Ellis engaged in an argument which quickly escalated into physical violence. The evidence indicated that the victim, Chad Ellis, threw the first punch, and was getting the better of appellant's brother up until the point at which appellant intervened. At some point, appellant approached the combatants and shot Ellis three times in the back. Ellis died shortly thereafter.[1] Thereafter, Pedro Bishop, the second shooting victim, hit appellant. Appellant struck Bishop on the head with the gun butt, whereupon Bishop fell to his knees, and wrapped his arms around appellant's legs. At that point, appellant fired the gun downward two more times. Keith Hampton tussled with appellant for possession of the gun and Dennis August approached with an upraised chair. Hampton ducked as August threw the chair, releasing his grasp on appellant. Appellant then ran from the club, leaving the gun on the floor.
When these events occurred, neither appellant nor his brother had a criminal history. However, the other combatants, including both victims, had significant prior criminal records. A Perry police officer testified that he knew both victims, and that both young men had reputations for violence in the community.
The defense theory was that appellant feared Chad Ellis would kill or seriously injure his brother, and because of this fear, appellant used force to defend his brother from Ellis and to defend himself from Bishop. In his first issue, appellant contends the evidence presented at trial was legally insufficient to sustain his conviction of any offense more serious than manslaughter. We disagree. Second degree murder is defined in section 782.04(2), Florida Statutes, as:
(2) The unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, is murder in the second degree and constitutes a felony of the first degree, ...
"An act is considered imminently dangerous to another and evincing a depraved mind if it is an act that (1) a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another, (2) is done from ill will, hatred, spite, or an evil intent, and (3) is of such a *992 nature that the act itself indicates an indifference to human life." Conyers v. State, 569 So.2d 1360, 1361 (Fla. 1st DCA 1990). See also Roberts v. State, 425 So.2d 70, 71 (Fla. 2d DCA 1982), review denied, 434 So.2d 888 (Fla.1983)("Depravity of mind means malice in the sense of ill will, hatred, spite or evil intent").
The use of force in defense of person is governed by section 776.012, Florida Statutes, which states:
A person is justified in the use of force, except deadly force, against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of deadly force only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another or to prevent the imminent commission of a forcible felony.
The acts deemed to constitute the imminently dangerous and depraved mind elements of second-degree murder depend upon the circumstances of each case. See Andrews v. State, 577 So.2d 650 (Fla. 1st DCA), review denied, 587 So.2d 1329 (Fla. 1991); Brown v. State, 454 So.2d 596 (Fla. 5th DCA), review denied, 461 So.2d 116 (Fla. 1984); Pierce v. State, 376 So.2d 417 (Fla. 3d DCA 1979), cert. denied, 386 So.2d 640 (Fla. 1980); McDaniel v. State, 620 So.2d 1308 (Fla. 4th DCA 1993).
We are cognizant that some of the facts of this case are somewhat similar to those involved in several of the cited cases in which second degree murder convictions have been reversed and remanded with directions to reduce the conviction to manslaughter. We also recognize that the evidence established Chad Ellis was the aggressor in the fight with appellant's brother, Wesley; Ellis was getting the better of Wesley; and that Ellis' friend, Pedro Bishop, moved toward the combatants before the shooting occurred, suggesting increased peril to appellant's brother.
However, evidence presented in support of the jury's verdict includes undisputed testimony that appellant was the only person involved in the altercation who used a weapon during the incident. Further, the evidence established that appellant shot Ellis three times in the back at close range. We believe these particular facts distinguish this case from those cases in which a second degree murder conviction was reduced to manslaughter or justifiable homicide. On the basis of these facts, the jurors were entitled to conclude that appellant used excessive force toward an unarmed aggressor, and that the act of firing three successive shots into the back of an individual engaged in a fist fight evinced the depraved mind regardless of human life essential to a conviction of second degree murder.
As his second issue, appellant contends the trial court improperly limited the expert testimony regarding appellant's state of mind at the time of the shooting. Again, we disagree. The trial court has broad discretion in determining the matters which are the proper subject of expert testimony. Johnson v. State, 393 So.2d 1069, 1072 (Fla. 1980), cert. denied, 454 U.S. 882, 102 S.Ct. 364, 70 L.Ed.2d 191 (1981). In the exercise of that discretion, the trial court in this case permitted appellant to offer evidence concerning the reason he feared Ellis, and the defense expert explained the degree and nature of fear appellant felt during the incident. Appellant's expert was permitted to testify that appellant functions at a marginal level of intelligence; he has a passive dependent personality; and he lacks self-confidence. The expert explained that the combination of these factors impairs appellant's ability to make quick and reasonable decisions when confronted with crisis situations. The expert further testified that appellant's inability to remember anything that happened immediately after the first shot was fired was consistent with the anxiety and panic he felt at the time.
It appears the expert testimony admitted at trial was sufficient for the jurors to evaluate the nature of appellant's fear at the time of the shooting, and to determine the effect of that fear in relation to appellant's use of force. The testimony appellant wished to elicit would have told jurors that *993 appellant was in a state of fear which caused him to believe that shooting Ellis was the only means available to him to prevent Ellis from killing or seriously injuring his brother. It is improper to permit an expert to express an opinion which applies a legal standard to a set of facts. See Gurganus v. State, 451 So.2d 817, 821 (Fla.1984); Shaw v. State, 557 So.2d 77 (Fla. 1st DCA 1990). See also Ehrhardt, Florida Evidence § 703.1 at 524 (1996 Edition).
As his third issue, appellant contends the trial court erred in imposing consecutive minimum mandatory sentences for use of a firearm for crimes which occurred during a single episode. We agree. It is improper to impose consecutive minimum mandatory sentences for use of a firearm in connection with multiple crimes committed in the course of one criminal episode. State v. Thomas, 487 So.2d 1043 (Fla.1986); Permenter v. State, 635 So.2d 1016, 1017 (Fla. 1st DCA 1994); Gardner v. State, 515 So.2d 408 (Fla. 1st DCA 1987). In Thomas, the supreme court carved an exception to the general rule announced in Palmer v. State, 438 So.2d 1 (Fla.1983), to hold that consecutive minimum mandatory sentences pursuant to section 775.087(2), Florida Statutes, may be imposed for offenses which arise from separate incidents occurring at separate times and places. See also Lifred v. State, 643 So.2d 94, 99 (Fla. 4th DCA 1994).
The evidence in this case shows the firearm was used in the commission of two separate offenses against two separate victims. However, there was no temporal break between the offenses, and the offenses were not committed in different locations. Thomas has been construed as prohibiting consecutive minimum mandatory sentences absent proof of separate offenses against separate victims, committed at separate times and places. Therefore, the consecutive firearm sentences imposed in this case must be reversed and remanded for resentencing.
Accordingly, we reverse the consecutive minimum mandatory firearm sentences, and remand for imposition of concurrent minimum mandatory sentences. We affirm as to the other issues raised by appellant.
BENTON, J., concurs.
BOOTH, J., specially concurring with written opinion.
BOOTH, Judge, specially concurring.
I concur with the majority that Appellant's consecutive minimum mandatory sentences require reversal under this court's decisions interpreting State v. Thomas, 487 So.2d 1043 (Fla.1986). Permenter v. State, 635 So.2d 1016 (Fla. 1st DCA 1994); Gates v. State, 633 So.2d 1158 (Fla. 1st DCA 1994); Gardner v. State, 515 So.2d 408 (Fla. 1st DCA 1987). However, I write to express my belief that the law on this issue is correctly stated in Lifred v. State, 643 So.2d 94 (Fla. 4th DCA 1994) (interpreting Thomas; en banc). In the absence of this court's prior decisions, I would follow Lifred and affirm Appellant's sentences.
NOTES
[1] The medical examiner testified that only one of the shots was fatal, but it was impossible to determine the sequence of the fatal shot, i.e., it could not be determined whether the first, second, or third shot was the actual cause of Ellis's death.