946 So.2d 555 (2006)
Sigfredo IRIZARRY, Appellant,
v.
STATE of Florida, Appellee.
No. 5D05-4274.
District Court of Appeal of Florida, Fifth District.
December 8, 2006.
Rehearing Denied January 16, 2007.
James S. Purdy, Public Defender, and Rebecca M. Becker and Michael S. Becker, Assistant Public Defenders, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, Brigid E. Collins, Kellie A. Nielan and Pamela J. Koller, Assistant Attorneys General, Daytona Beach, for Appellee.
*556 GRIFFIN, J.
Sigfredo Irizarry ["Irizarry"] appeals the consecutive minimum mandatory sentences he received following his convictions for robbery, kidnapping, and burglary. We reverse.
On December 26, 2003, Irizarry entered the Lake Mary 8 Theater. The last movie of the night was about to end, and Assistant Manager, Lance White ["White"] was shutting down equipment in an area of the theater restricted to employees. White saw Irizarry in the employees-only area and asked if he could help him. Irizarry then drew a semi-automatic handgun and ordered White into the office. He told White, "I want the safe. I want all the money. Be really quiet or I will shoot you." As White struggled to open the safe, Irizarry put the gun to White's back and said, "I'm going to end you." He ordered White to put the cash, deposit slips, and receipts into a bag.
Christopher Harris ["Harris"], who had been waiting for White, then knocked on the office door to see what had been delaying him. In response, Irizarry opened the door, pointed the gun at Harris' face, and ordered him to lie face down on the floor. Irizarry took the batteries from each victim's cell phone, directed White to tie up Harris, and then proceeded to bind White and gag both victims. After he finished gagging the victims, Irizarry fled out a back door. Shortly thereafter, Irizarry was captured by the police.
Irizarry was charged with two counts of robbery with a firearm, two counts of kidnapping with a firearm, burglary of a structure with an assault or battery, and possession of a firearm by a convicted felon. As charged, each offense was subject to the 10-20-life statute, which governs sentencing for specified offenses involving a firearm. See § 775.087(2), Fla. Stat. (2003). In accordance with this statute, each of Irizarry's first five charges was punishable by a mandatory minimum sentence of ten years and a maximum of life imprisonment. The possession charge was punishable by a mandatory minimum sentence of three years and a maximum of fifteen years imprisonment. Irizarry pled no contest and was adjudicated guilty of each of the six counts.
On November 28, 2005, the trial court held a hearing to determine Irizarry's sentence. The State computed Irizarry's sentencing range under the Criminal Punishment Code Score Sheet as between 18.6 years and life. The State argued that the minimum mandatory sentences should run consecutively, totaling 53 years. The State contended that the Florida supreme court's opinion in State v. Sousa, 903 So.2d 923 (Fla.2005), supported this position. During the sentencing hearing, defense counsel disagreed that the trial court had the authority to impose Irizarry's sentences consecutively. Defense counsel urged that the State misread Sousa. Accepting the State's position, the trial court said:
I want the record to reflect that my reading of the case of Adam Sousa reported at 903 So 2d [sic] 923 requires the imposition of consecutive sentences.
At issue is the meaning of section 775.087(2)(d), Florida Statutes (2003):
It is the intent of the Legislature that offenders who actually possess, carry, display, use, threaten to use, or attempt to use firearms or destructive devices be punished to the fullest extent of the law, and the minimum terms of imprisonment imposed pursuant to this subsection shall be imposed for each qualifying felony count for which the person is convicted. The court shall impose any term of imprisonment provided for in this subsection consecutively to any other *557 term of imprisonment imposed for any other felony offense.

§ 775.087(2)(d), Fla. Stat. (2003) (emphasis added). In Sousa, the defendant shot two of his three victims in rapid succession during a single criminal episode. Sousa, 903 So.2d at 924. Sousa was subsequently convicted of two counts of attempted murder with a firearm, and one count of aggravated assault with a firearm. Id. The trial court imposed consecutive minimum mandatory sentences. The issue presented on appeal was whether the trial court had the authority to impose the minimum mandatory sentences consecutively. Id. Relying on Mondesir v. State, 814 So.2d 1172 (Fla. 3d DCA 2002), the Second District Court reversed the trial court and held that section 775.087(2)(d) prohibited the trial court from imposing the sentences consecutively. Id. at 927. The Florida supreme court reversed the Second District Court and affirmed the trial court's sentence. Id. at 928.
The Sousa court proceeded in its analysis of the sentences by first considering whether the trial court would have had the authority to impose consecutive minimum mandatory sentences before the 10-20-life statute amended section 775.087 in 1999, and then considering how, if at all, the trial court's authority was limited by these amendments.
In considering the extent of the trial court's authority prior to the 1999 amendments, the Sousa court discussed its decisions in Palmer v. State, 438 So.2d 1 (Fla. 1983), State v. Thomas, 487 So.2d 1043 (Fla.1986), and State v. Christian, 692 So.2d 889 (Fla.1997). These cases recognize that it is the legislature who decides what portion of their sentence convicts must serve before becoming eligible for parole. Sousa, 903 So.2d at 924-25. Courts cannot exceed such terms by imposing mandatory minimum terms for related offenses consecutively. Id. The Sousa court relied on its opinions in Palmer, Thomas, and Christian to explain when the trial court may impose mandatory minimum sentences consecutively, without exceeding its authority.
The Sousa court explained that Palmer stands for the proposition that the trial court cannot impose mandatory minimum sentences consecutively for offenses arising out of the same criminal episode. Sousa, 903 So.2d at 925 (citing Palmer, 438 So.2d at 4). In Thomas, the court held that firearm offenses arising from a single episode are sufficiently separate to permit the imposition of consecutive mandatory minimum sentences when the defendant separately shot at more than one person. Thomas, 487 So.2d at 1044-45. Finally, in describing this line of case law, Sousa cites Christian for the proposition that consecutive sentencing of mandatory minimums is permissible for offenses arising from a single episode where the offenses caused "injury to multiple victims or multiple injuries to one victim." Sousa, 903 So.2d at 925 (citing Christian, 692 So.2d at 890-91). Specifically, the Christian court said:
The injuries bifurcate the crimes for stacking purposes. The stacking of firearm mandatory minimum terms thus is permissible where the defendant shoots at multiple victims, and impermissible where the defendant does not fire the weapon.
Christian, 692 So.2d at 890-91. The Sousa court concluded that the trial court had the authority under Christian to consecutively impose the defendant's minimum mandatory sentences. Sousa, 903 So.2d at 926.
The Sousa court next considered whether the 1999 amendments to section 775.087 altered the law announced in Christian. The court wrote:

*558 We disagree that section 775.087 as amended still does not permit consecutive sentencing. To draw that conclusion we would have to find that the 1999 amendment to section 775.087 overrules our decisions in Christian and Thomas. We do not agree. Rather we conclude that this amendment to the statute is consistent with the decisions in Christian and Thomas.

Sousa, 903 So.2d at 927. Sousa thus appears to stand for the proposition that the 10-20-life statute did not diminish the trial court's authority, as interpreted by prior case law, to impose mandatory minimum sentences consecutively.
Irizarry's argument on appeal is that the trial court erred in interpreting Sousa to mean that it had to consecutively impose Irizarry's mandatory minimum 10-20-life sentences. The State argues that the trial court properly ordered the minimum mandatory sentences to run consecutively, because "Sousa held that the plain language of section 775.087(2)(d) demands consecutive mandatory minimums." Moreover, the plain language of the statute, standing alone, requires imposition of the sentences consecutively. The problem with the State's argument is that it misunderstands the holding in Sousa. Sousa is clear that Christian and Thomas still apply in determining when minimum mandatory sentences for 10-20-life offenses may be consecutively imposed. Christian and Thomas provide that consecutive mandatory minimums are not permitted where a defendant does not fire the weapon.
It is undisputed that each of Irizarry's offenses was a 10-20-life offense, that each offense arose from a single criminal episode, and that, during this criminal episode, Irizarry did not injure multiple victims or cause multiple injuries to any one victim. Nor did he fire his gun. Thus, under Christian, the trial court did not have the authority to consecutively impose Irizarry's minimum mandatory sentences. Accordingly, we vacate the sentences and remand for resentencing.
Sentence VACATED and REMANDED.
ORFINGER, J., concurs.
PLEUS, C.J., concurs and concurs specially, with opinion.
PLEUS, C.J., concurring specially.
I reluctantly concur. Judge Griffin's analysis of Sousa appears to me correct. Even though I disagree with the supreme court's interpretation of the statute, we are obliged to follow the law as set forth by the supreme court. Were it not for that obligation, I would affirm the trial court. Section 775.087(2)(d) says what it says in unambiguous terms.