WALLACE, Judge.
 

 Jamarr Lanard Scott sprayed automatic weapons fire at nine people in a single episode but, fortunately, hit none of them. He was found guilty by a jury of nine counts of attempted second-degree murder and sentenced to a twenty-year mandatory minimum prison term on each count in accordance with section 775.087(2), Florida Statutes (2007).
 
 [1]
 
 The only issue presented here is whether the trial court could properly designate the nine mandatory minimum sentences to run consecutively. Because Mr. Scott fired his weapon at multiple victims, we hold that the stacking of the nine mandatory minimum twenty-year sentences is permissible. Accordingly, we affirm Mr. Scott’s judgment and sentences.
 

 I. THE FACTS AND PROCEDURAL BACKGROUND
 

 The incident in question occurred outside the home of Edith Sermons in St. Petersburg on October 10, 2007. At the time, there were nine people in and around Ms. Sermons’ residence. Some were out
 
 *924
 
 side in front of the house; others were inside the house sleeping. The shooting incident was precipitated by a relatively trivial interfamily quarrel.
 

 At the beginning of the incident, two cars stopped in front of Ms. Sermons’ residence. Several men carrying firearms, including Mr. Scott, stepped out of the cars. Mr. Scott was armed with a semiautomatic assault rifle. Mr. Scott and the other men opened fire, spraying the Sermons residence with bullets. Several individuals were shot at while they were standing outside in front of the house. The people sleeping inside the house awoke to the sound of gunfire and breaking glass. One or two of the individuals inside the house slept through the entire incident. Later, they discovered bullet holes in the ceiling or in the walls near their beds. Miraculously, no one was hit by the hail of bullets.
 

 Law enforcement officers identified a total of nine individuals who were in the line of fire. The State charged Mr. Scott with nine counts of attempted second-degree murder — one for each of the nine victims. A jury found Mr. Scott guilty as charged on all nine counts. The jury also found that Mr. Scott was in actual possession of a firearm and that he discharged the firearm during the commission of the crimes. The trial court adjudged Mr. Scott to be guilty in accordance with the jury’s verdicts and sentenced him to serve a twenty-year mandatory minimum term of imprisonment on each count. The sentences were designated to run consecutively-
 

 Mr. Scott filed a motion to correct illegal sentence in accordance with Florida Rule of Criminal Procedure 3.800(b)(2). In his motion, Mr. Scott alleged that the trial court impermissibly stacked the nine twenty-year mandatory minimum sentences. The State conceded error, agreeing with Mr. Scott that it was improper to impose consecutive mandatory minimum sentences under section 775.087(2) because the offenses took place during a single episode and because none of the victims sustained physical injuries. The trial court denied the motion to correct illegal sentence. The trial court disapproved the State’s concession of error and concluded that Mr. Scott’s argument lacked legal merit.
 

 II. MR. SCOTT’S ARGUMENTS
 

 On appeal, Mr. Scott does not question the sufficiency of the evidence to establish his criminal liability for nine counts of attempted second-degree murder, nor does he object to the basic sentences imposed for each count. Instead, he challenges the trial court’s decision to impose the nine mandatory minimum terms consecutively.
 

 In support of his position, Mr. Scott makes two related arguments. First, he argues that the “time and place” test enunciated in
 
 Palmer v. State,
 
 438 So.2d 1 (Fla.1983), prevents the stacking of mandatory minimum sentences in his case because his crimes occurred during a single incident of very short duration, and he stood in one place throughout the entire episode. Second, he argues that it is improper to impose consecutive mandatory minimum sentences under section 775.087(2) because the offenses took place during a single episode and none of the victims sustained actual injuries.
 

 III. DISCUSSION
 

 We agree with Mr. Scott that the “time and place” test is applicable to the facts of this case; however, that test is not disposi-tive of the question presented. There is no dispute that the crimes in this case arose from a single criminal episode and that Mr. Scott did not move during the entire duration of the incident. But the issue 'before us is whether the fact that Mr. Scott’s conduct threatened multiple
 
 *925
 
 victims allows stacking of the mandatory minimum portions of his sentences. On this critical point, we disagree with Mr. Scott.
 

 Our supreme court has held that consecutive mandatory minimum sentences may be imposed under section 775.087(2) for multiple crimes committed during a single criminal episode where there are “separate and distinct offenses involving ... separate and distinct victims.”
 
 State v. Thomas,
 
 487 So.2d 1043, 1044-45 (Fla.1986) (affirming the trial court’s stacking of mandatory minimum sentences on counts of attempted first-degree murder and aggravated assault committed upon two separate victims);
 
 see also Downs v. State,
 
 616 So.2d 444, 446 (Fla.1993) (affirming the trial court’s stacking of mandatory minimum sentences for the murder of one victim and the aggravated assault with a firearm upon a witness to the murder).
 

 Mr. Scott urges this court to adopt the position that even though there were multiple victims, stacking is nevertheless impermissible because the victims suffered no injury. Mr. Scott contends that he cannot be sentenced to consecutive mandatory minimum terms of imprisonment on each count because the victims did not suffer any injury. In his view, the determinative factor regarding the permissibility of stacking of mandatory minimum sentences is not the number of victims supporting the multiple counts of attempted murder, but whether those victims incurred actual injury.
 

 This argument appears to derive from a passage from the opinion in
 
 State v. Christian,
 
 692 So.2d 889, 890-91 (Fla.1997), where our supreme court said, “As a general rule, for offenses arising from a single episode, stacking is permissible where the violations of the mandatory minimum statutes cause injury to multiple victims, or multiple injuries to one victim. The injuries bifurcate the crimes for stacking purposes.” (Footnotes omitted.) However, in the same opinion, the court explained that “[t]he injury may consist of the heightened danger caused by a fired weapon.”
 
 Id.
 
 at 890 n. 1 (citing
 
 Thomas,
 
 487 So.2d 1043). Further, immediately following the statement relied on by Mr. Scott, the supreme court continued by saying, “The stacking of firearm mandatory minimum terms thus is permissible where the defendant
 
 shoots at
 
 multiple victims, and impermissible where the defendant does not fire the weapon.”
 
 Id.
 
 at 891 (emphasis added) (footnote omitted);
 
 see also State v. Sousa,
 
 903 So.2d 923, 926 (Fla.2005) (“[Consecutive mandatory minimum sentences are permissible when a defendant shoots at multiple victims.”);
 
 Downs,
 
 616 So.2d at 446 (holding that the murder of the defendant’s wife and the simultaneous aggravated assault on a witness justified the imposition of consecutive mandatory minimum sentences);
 
 Thomas,
 
 487 So.2d at 1044 (stacking approved where the defendant shot one victim and shot at, but missed, a second victim);
 
 Hargrove v. State,
 
 905 So.2d 275, 276 (Fla. 2d DCA 2005) (stacking of mandatory minimum sentences approved where the defendant shot the driver of a car and shot at a passenger but missed).
 

 In
 
 Lifred v. State,
 
 643 So.2d 94 (Fla. 4th DCA 1994) (en banc), the Fourth District, in an opinion written by then Judge Par-iente, carefully analyzed the prior case law as follows:
 

 [I]n the case of a
 
 single victim of multiple crimes
 
 arising out of single criminal episode, the analysis appropriately turns on whether offenses subsequent to the initial offense are sufficiently separated by time and place, as well as by nature of the crimes and manner of commission. In that case, the determination is wheth
 
 *926
 
 er each crime represents a separate and additional violation of the victim’s rights, even if the entire criminal event arose out of a single criminal episode.... However, in the case of
 
 multiple discharges of a firearm at multiple victims,
 
 there are, by definition, separate violations of each victim’s rights.
 

 An analysis barring imposition of stacked mandatory mínimums, merely because the crimes against multiple victims are not separated by time and place, can lead to distinctions not fostering any stated legislative policy regarding restrictions on eligibility for parole. For example, we cannot see how a criminal who shoots three victims in the course of an armed robbery while the victims remain in the same location should be punished
 
 less
 
 severely than a criminal who shoots one victim three times at three separate locations.
 

 Id.
 
 at 97-98 (second emphasis added) (citations omitted). Based on this analysis, the Fourth District concluded:
 

 [W]e hold that in the case of multiple victims, the primary factor triggering the imposition of consecutive mandatory mínimums is whether the firearm has been discharged more than once to shoot those victims. An analysis of the nature of the crime, manner of commission, time and place may assist in the inquiry of whether qualitatively separate and distinct criminal acts occurred; but with discharges of the firearm to injure multiple victims, separation of time or place should not be dispositive.
 

 In the case of armed robberies of multiple victims, as in
 
 Palmer,
 
 the firearm is used simultaneously and in the same manner to rob more than one person. However, discharge of a firearm in the course of an armed robbery changes the nature of the crime and manner of commission. With each successive discharge of the firearm at each additional victim, the fireann is being used separately and distinctly, and in a different manner.
 

 Id.
 
 at 98. In
 
 Christian,
 
 692 So.2d at 891, the supreme court specifically approved the result in
 
 Lifred.
 
 And in
 
 Sousa,
 
 903 So.2d at 925, the supreme court quoted the holding in
 
 Lifred
 
 with approval.
 

 In 1999, the legislature overhauled section 775.087, adding, among other changes, subsection (2)(d):
 

 It is the intent of the Legislature that offenders who actually possess, carry, display, use, threaten to use, or attempt to use firearms or destructive devices be punished to the fullest extent of the law, and the minimum terms of imprisonment imposed pursuant to this subsection shall be imposed for each qualifying felony count for which the person is convicted.
 
 The court shall impose any term of imprisonment provided for in this subsection consecutively to any other term of imprisonment imposed for any other felony offense.
 

 Ch. 99-12, § 1, at 540, Laws of Fla. (emphasis added). After the effective date of the amendment to the statute, Adam Sousa went on a shooting spree, injuring two victims and assaulting a third.
 
 Sousa,
 
 903 So.2d at 924. Sousa was convicted of two counts of attempted second-degree murder and one count of aggravated assault.
 
 Id.
 
 Based on the revised statute, “[t]he trial court imposed three consecutive sentences: fifty years of imprisonment, with a twenty-five-year mandatory minimum term for each of the two attempted second-degree murder convictions, and five years of imprisonment, with a three-year mandatory minimum term for the aggravated assault conviction.”
 
 Id.
 
 In upholding the trial
 
 *927
 
 court’s sentences,
 
 [2]
 
 the supreme court endorsed the Fourth District’s reasoning in
 
 Lifred
 
 and reaffirmed that its holdings in
 
 Thomas
 
 and
 
 Christian
 
 support the imposition of mandatory minimum terms where a defendant shoots at multiple victims in the course of a single criminal episode.
 
 See Sousa,
 
 903 So.2d at 925-26;
 
 see also Etienne v. State,
 
 15 So.3d 890, 893 (Fla. 4th DCA 2009) (holding that where two counts of attempted first-degree murder with a firearm and one count of attempted robbery arose from a single criminal episode, “[e]ven if this case involved only one episode, the trial court’s [consecutive mandatory minimum] sentences still were legal”).
 

 Mr. Scott also relies on this court’s earlier opinions in
 
 Young v. State,
 
 631 So.2d 372 (Fla. 2d DCA 1994), and
 
 Wortham v. State,
 
 657 So.2d 1256 (Fla. 2d DCA 1995). Regarding
 
 Young,
 
 we note that our earlier decision predated the 1999 change to section 775.087, and the holding in that case has been effectively, if not directly, overruled by more recent opinions such as
 
 Christian
 
 and
 
 Sousa. Wortham
 
 cannot be binding here because the opinion does not state the pertinent facts. However, insofar as the
 
 Wortham
 
 court felt it was unable to follow
 
 Lifred’s
 
 holding “that separate shots from a firearm at different victims constituted separate and distinct crimes, irrespective of the time and space analysis historically associated with this issue,”
 
 Wortham,
 
 657 So.2d at 1256, this question has been resolved against Mr. Scott’s position by
 
 Sousa.
 
 This court took notice of this fact in
 
 Hargrove,
 
 905 So.2d at 276 (recognizing that under
 
 Sousa,
 
 stacking was permissible where the defendant shot the driver of a car and also shot at the passenger but missed).
 

 In addition, Mr. Scott relies on this court’s more recent decision in
 
 Church v. State,
 
 967 So.2d 1073 (Fla. 2d DCA 2007), and on the Fifth District’s decision in
 
 Irizarry v. State,
 
 946 So.2d 555 (Fla. 5th DCA 2006). Mr. Scott’s reliance on
 
 Church
 
 and
 
 Irizarry
 
 is also misplaced. In both of those cases, stacking was held to be impermissible because the defendant did not fire a weapon at the multiple victims.
 
 Church,
 
 967 So.2d at 1075;
 
 Irizarry,
 
 946 So.2d at 558;
 
 see also Christian,
 
 692 So.2d at 891 (“The stacking of firearm mandatory minimum terms thus is permissible where the defendant shoots at multiple victims, and impermissible where the defendant does not fire the weapon.” (footnote omitted)). Because Mr. Scott did fire his weapon,
 
 Church
 
 and
 
 Irizarry
 
 are not controlling here.
 

 For these reasons, we affirm the judgment and the sentences imposed.
 

 Affirmed.
 

 CASANUEVA, C.J., and KELLY, J„ Concur.
 

 [1]
 

 . This subsection of the statute is often referred to as the 'T0-20-LIFE” law.
 

 [2]
 

 . In
 
 Sousa,
 
 the supreme court quashed this court’s decision in
 
 Sousa v. State,
 
 868 So.2d 538 (Fla. 2d DCA 2003), and disapproved
 
 Mondesir v. State,
 
 814 So.2d 1172 (Fla. 3d DCA 2002).