689 So.2d 1159 (1997)
Charlie WALLACE, Appellant,
v.
STATE of Florida, Appellee.
No. 95-2415.
District Court of Appeal of Florida, Fourth District.
March 5, 1997.
Clarification Denied April 9, 1997.
*1160 Richard Jorandby, Public Defender, and David McPherrin, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Myra J. Fried, Assistant Attorney General, West Palm Beach, for appellee.
FARMER, Judge.
Both of the issues raised on appeal engage our present attention. Although we affirm the conviction, we write to explain why we have concluded that we are unable to follow precedent from another court of appeal.
The defendant was initially charged with battery on a law enforcement officer, aggravated assault on a law enforcement officer, and aggravated battery. Following jury selection, defendant was granted a continuance to locate witnesses. After the continuance was granted, the State amended the information to add two counts of battery on a law enforcement officer and two counts of resisting an officer with violence.
The trial court denied a defense motion to dismiss the additional counts on grounds of prosecutorial vindictiveness, and the case thus proceeded to trial on the amended information. At the conclusion of the state's case, the trial court reserved ruling on defendant's motion for a judgment of acquittal on all counts. The State then proceeded to nolle prosse the two counts of battery on a law enforcement officer. The remaining charges were submitted to the jury, and the defendant was found guilty on all six.
Defendant was raking his mother's yard when an altercation ensued. He struck his sister, who then called police. The first officer on the scene saw defendant run across his mother's yard to his sister and strike her several times with a rake until it broke. The officer told defendant to drop the rake and that he was under arrest. Defendant then approached the first officer, threatening to strike him with the rake. When the officer pulled his baton and ordered defendant to drop the rake, defendant attempted to punch the first officer.
At that point, a second officer arrived on the scene, as the first officer was instructing defendant to lie on the ground, and the second officer attempted to handcuff him. Defendant pulled away from the second officer and punched him in the face. The defendant became very violent and punched and kicked both officers as they sprayed him in an effort to quell him. He then knocked the second officer to the ground and grabbed the first officer in a bear hug and dropped him to the ground as well. Defendant continued to fight until he noticed that his hand was bleeding, at which point he gave up and ceased resisting.
Defendant complains on appeal of his conviction and sentence on each of two separate counts of resisting an officer with violence. He contends that the statute proscribing resistance with violence, section 843.01,[1] does not set forth the allowable unit of prosecution with sufficient clarity, citing Pierce v. State, 681 So.2d 873 (Fla. 1st DCA 1996). Pierce reversed two of three convictions for resisting, holding that section 843.01 does not clearly define the allowable unit of prosecution. The first district found an ambiguity in the use of any to modify the class of officers to whom the statute applies.[2] The court *1161 relied on State v. Watts, 462 So.2d 813 (Fla. 1985). Watts, in turn, simply followed the court's earlier decision in Grappin v. State, 450 So.2d 480 (Fla.1984).
In Grappin the court considered whether section 812.014(2)(b) unambiguously permitted five separate convictions for stealing five firearms during a single burglary. In this statute, the legislature has defined the crime of second degree grand theft by describing the property stolen.[3] The court held that the statute permitted multiple convictions, saying:
"[w]e find that the use of the article `a' in reference to `a firearm' in section 812.014(2)(b)3 clearly shows that the legislature intended to make each firearm a separate unit of prosecution."
450 So.2d at 482.
In Watts the court considered whether section 944.47 permitted separate convictions for possession of two handmade knives in prison. Section 944.47 proscribes the possession of specified things by prison inmates, one of which is defined as "any firearm or weapon of any kind." [emphasis supplied.] Watts held that the defendant could not be convicted of more than one offense for the possession of two knives, explaining:
"In Grappin, we held that the unlawful taking of two or more firearms during the same criminal episode is subject to separate prosecution and punishment under the theft statute as to each firearm taken.... We reasoned that Grappin may be charged in a five-count information with five thefts because the article `a' prefaced firearm. We noted that the use of the article `a' in reference to `firearm' in section 812.014(2)(b)3 clearly shows that the legislature intended to make each firearm a separate unit of prosecution. [citations omitted.] We specifically contrasted the article `a' with the article `any' by pointing out that federal courts have held that the term `any firearm' is ambiguous with respect to the unit of prosecution and must be treated as a single offense with multiple convictions and punishments being precluded."
462 So.2d at 813-814.
In short, the differences in result in Grappin and Watts center around both the nature of the crime charged and the precise statutory text. In Grappin, the crime was stealing, while in Watts the crime was possession of contraband. To us, there is fundamental difference between the act of stealing five separate items of property, and the act of possessing contraband which consists of two separate items. Each item of property stolen is logically a separate crime of theft; each item stolen represents a discrete act. The essence of the crime of theft is the taking and asportation of any single item of property. Possession of contraband, on the other hand, does not involve any taking and asportation. Its essence is in the having, whether (unless the legislature explicitly states otherwise) the contraband consists of a single unit of proscribed material or in multiple items.
The crime of resisting an officer with violence is like theft, in that the statutory unit of prosecution is violence done to a single officer. The word "any" modifies who may be classified as an officer within the coverage of the statute, not the number of charges that can brought from an incident of resistance. Section 843.01 prohibits offering or doing violence "to the person of such officer." [emphasis supplied.] The legislature's omission of the plural, "officers" [with an s] in the statutory phrase just quoted eliminates any theoretical doubt or ambiguity in the use of the article any. The text of section 843.01 thus undeniably demonstrates that the intended prosecutorial unit is any individual officer who is resisted.
In this sense, the statute resembles its juristic cousins, assault and battery. Just as each person battered constitutes a separate crime, so too each officer resisted in the performance of his duties with violence is a separate act. Indeed to hold otherwise simply because the two separate acts of violence occurred during a spree of violent resistance of peace officers is to give violent persons no incentive to refrain from battering additional *1162 officers after they have committed an act of violence on the first officer. After Butch and Sundance have shot the first member of the posse chasing them, they would have no reason not to shoot them all. That hardly seems a result the legislature intended, let alone a result suggested in the text they chose for section 843.01.
In this instance, our logic is entirely vindicated by historythat is, "legislative history." This particular history does not relate, however, to reports or speeches in committee or on the floor of either chamber about the statute under which Wallace was convicted. Rather, it deals instead with the legislature's quite explicit statement of textual meaning in its general rules of construction of criminal statutes.[4] We address the history of that statement of intent.
Section 775.021 contains a general statement of legislative intent, the following provisions of which are applicable to our reading of section 843.01:
"(2) The provisions of this chapter are applicable to offenses defined by other statutes, unless the code otherwise provides.
. . . . .
"(4)(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.
(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:
1. Offenses which require identical elements of proof.
2. Offenses which are degrees of the same offense as provided by statute.
3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense."
Subparagraph (4)(a) was in effect at the time of both the Grappin (1984) and Watts (1985) decisions. But subparagraph (4)(b) was not adopted until 1988. It is the adoption of subparagraph (4)(b) to which we refer in our consideration of history.
In Carawan v. State, 515 So.2d 161 (Fla. 1987), the supreme court held that the legislature had not made clear in section 775.021 whether it intended for separate punishments for the crimes of attempted manslaughter, aggravated battery, and shooting into an occupied building, arising from a single incident or episode. In 1988, the legislature "overruled" Carawan by adopting what is now subparagraph (4)(b) of section 775.021. As the supreme court itself explained in the year following the enactment:
"It is readily apparent that the legislature does not agree with our interpretation of legislative intent and the rules of construction set forth in Carawan. More specifically:
(1) The legislature rejects the distinction we drew between act or acts. Multiple punishment shall be imposed for separate offenses even if only one act is involved.
(2) The legislature does not intend that (renumbered) subsection 775.021(4)(a) be treated merely as an `aid' in determining whether the legislature intended multiple punishment. Subsection 775.021(4)(b) is the specific, clear, and precise statement of legislative intent referred to in Carawan as the controlling polestar. Absent a statutory degree crime or a contrary clear and specific statement of legislative intent in the particular criminal offense statutes, all criminal offenses containing unique statutory elements shall be separately punished.

*1163 (3) Section 775.021(4)(a) should be strictly applied without judicial gloss.
(4) By its terms and by listing the only three instances where multiple punishment shall not be imposed, subsection 775.021(4) removes the need to assume that the legislature does not intend multiple punishment for the same offense, it clearly does not. However, the statutory element test shall be used for determining whether offenses are the same or separate. Similarly, there will be no occasion to apply the rule of lenity to subsection 775.021(4) because offenses will either contain unique statutory elements or they will not, i.e., there will be no doubt of legislative intent and no occasion to apply the rule of lenity." [citations omitted, footnotes omitted.]
State v. Smith, 547 So.2d 613, 616 (Fla.1989). There can be no doubt under this holding that section 775.021(4)(b) makes it dangerous to read decisions like Grappin and Watts. It is necessary to consider the effect of the 1988 legislation.
We see parallels between our analysis in this case and our analysis in Lifred v. State, 643 So.2d 94 (Fla. 4th DCA 1994). In that case, the convictions included attempted murder with a firearm against one victim, and aggravated battery with a firearm against another victim, both arising from a single incident. We began the analysis with our understanding of section 775.021(4), saying:
"We start with the proposition that pursuant to section 775.021(4), Florida Statutes (1989), a trial court has discretion to impose separate sentences, either concurrently or consecutively, for each separate criminal offense arising out of a single criminal transaction or episode."
643 So.2d at 95. In concluding that section 775.021 permitted separate sentences with separate mandatory minimum periods, we stated:
"However, in the case of multiple discharges of a firearm at multiple victims, there are, by definition, separate violations of each victim's rights.
"An analysis barring imposition of stacked mandatory minimums, merely because the crimes against multiple victims are not separated by time and place, can lead to distinctions not fostering any stated legislative policy regarding restrictions on eligibility for parole. For example, we cannot see how a criminal who shoots three victims in the course of an armed robbery while the victims remain in the same location should be punished less severely than a criminal who shoots one victim three times at three separate locations."
643 So.2d at 97. We then added:
"We do not believe that the legislature, in enacting section 775.087(2), intended to restrict the sentence that a trial court may impose on a defendant such as Lifred to a mandatory minimum of three years for each victim he injured or attempted to kill, rather than two mandatory minimums of three years as ordered in this case."
643 So.2d at 98.
As in Lifred, each one of these officers was a separate "victim". There is no meaningful distinction in the fact that the charges here are resisting an officer with violence. He punched each one of the officers and wrestled both to the ground. The mere fact that each of the separate punches and the wrestling occurred within seconds of the other on the same plot of ground does not remove them from the legislature's rather clear command of separateness in convictions and punishments. In the context of section 843.01, there is no ambiguity in the use of any to define who may be a victim of the resistance. Under this statute, any does not define the "allowable unit of prosecution"merely the class of officers to whom the statute's protection is intended. An attack against different members of the class may properly lead to separate convictions and punishment.
It is obvious that we disagree with the first district's contrary conclusion in Pierce. Accordingly, we certify conflict.
Defendant also argues that the State's filing of an amended information, after he turned down a plea offer and after his motion for continuance was granted, to include four additional counts from the same episode, *1164 raised a presumption of prosecutorial vindictiveness. It is apparent from our reading of the transcript that the trial judge accepted the prosecutor's statement that he offered to allow defendant to plead "straight-up" to the then existing charges, failing which he would amend the information to add all charges that conceivably arose from the event.
There is no presumption of prosecutorial vindictiveness when additional charges are filed, even at the beginning of trial, after a defendant's refusal to plead guilty to the initially charged crimes. State v. Phillips, 642 So.2d 18 (Fla. 2d DCA 1994), rev denied, 561 So.2d 1195 (Fla.1995); Rosser v. State, 658 So.2d 175 (Fla. 3d DCA 1995); Huffman v. State, 636 So.2d 842 (Fla. 5th DCA 1994). The record indicates that there was no prejudice to the defendant when the state amended the information, because defendant was out on bail and the trial was continued for twelve days to allow him to interview and depose new witnesses.
AFFIRMED.
STEVENSON and GROSS, JJ., concur.
NOTES
[1] See § 843.01, Fla. Stat. (1995), which states (omitting nonpertinent parts):

"Whoever knowingly and willfully resists, obstructs, or opposes any officer ... in the lawful execution of any legal duty, by offering or doing violence to the person of such officer ... is guilty of a felony of the third degree ...." [emphasis supplied.]
[2] The OED defines any as:

"An indeterminate derivative of one, or rather its weakened adj. form a, an, in which the idea of unity (or, in plural, partitivity) is subordinated to that of indifference as to the particular one or ones that may be selected."
THE COMPACT OXFORD ENGLISH DICTIONARY (2d ed.) 60.
[3] "It is grand theft of the second degree ... if the property stolen is ... a firearm." [emphasis supplied.]
[4] See § 775.021(6), Fla. Stat. (1995).