724 So.2d 1176 (1998)
Charlie WALLACE, Petitioner,
v.
STATE of Florida, Respondent.
No. 90,287.
Supreme Court of Florida.
December 10, 1998.
Richard L. Jorandby, Public Defender, and David McPherrin, Assistant Public Defender, West Palm Beach, for Petitioner.
*1177 Robert Butterworth, Attorney General, Celia A. Terenzio, Acting Bureau Chief, Senior Assistant Attorney General, and Myra J. Fried, Assistant Attorney General, West Palm Beach, for Respondent.
PER CURIAM.
We have for review Wallace v. State, 689 So.2d 1159 (Fla. 4th DCA 1997), which certified conflict with the decision in Pierce v. State, 681 So.2d 873 (Fla. 1st DCA 1996), on the issue of whether section 843.01, Florida Statutes (1993), permits more than one conviction predicated on a single incident during which a person resists multiple officers attempting to effect a single arrest. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. For the reasons expressed herein, we hold that only one conviction may be obtained. We approve the reasoning of Pierce and quash the decision in Wallace.
Wallace was charged with and convicted of numerous offenses including two counts of resisting an officer with violence under section 843.01, Florida Statutes (1993), arising out of an altercation between Wallace and two police officers who were called to Wallace's home by his sister.[1] When the first officer on the scene saw Wallace strike his sister with a rake, the officer ordered Wallace to drop the rake and informed him he was under arrest. Wallace resisted and threatened to strike the officer with the rake, and when the officer pulled his nightstick, Wallace unsuccessfully attempted to punch him. When a second officer attempted to handcuff Wallace, Wallace again resisted, pulled away, and punched the officer in the face. Wallace thereafter continued to resist the officers and stopped only when he noticed his hand was bleeding.
Wallace was arrested and charged with numerous offenses, including multiple counts of battery on a law enforcement officer, aggravated assault on a law enforcement officer, aggravated battery, and two counts of resisting an officer with violence under section 843.01.[2] Upon conviction,[3] Wallace appealed, contending that section 843.01 permitted only one charge and conviction for resisting the officers in their attempt to arrest him, regardless of whether more than one officer was involved, since the evidence showed continuous resistance of the attempted arrest in a single incident. The Fourth District rejected his appeal, holding that section 843.01 allows separate convictions for each individual officer actually present and resisted at the scene. Wallace, 689 So.2d at 1163. In so holding, however, the district court recognized and certified conflict with Pierce v. State, 681 So.2d 873 (Fla. 1st DCA 1996). Id.

PIERCE
Only petitioner's convictions for two counts of resisting an officer in the execution of a *1178 legal duty under section 843.01 are at issue in this proceeding. In a situation similar to that presented here, the defendant in Pierce was charged with three counts of resisting an officer predicated on one episode of an attempted arrest during which he resisted three officers. 681 So.2d at 873. The First District held that only one conviction was permitted in connection with this single episode, relying upon this Court's decision in State v. Watts, 462 So.2d 813 (Fla.1985). Pierce, 681 So.2d at 874. Citing Watts, the court in Pierce held that because section 843.01 prohibits resisting "any" officer, as opposed to "an" officer, "and the three counts ... [were] predicated on one incident during which the appellant resisted or opposed three officers, only one conviction [was] permitted." Id.

GRAPPIN AND WATTS[4]
We find that this conflict may be resolved in accordance with our decisions in Grappin v. State, 450 So.2d 480 (Fla.1984), and Watts. In Grappin the defendant was convicted of five separate acts of larceny for stealing five firearms during the commission of a burglary. Focusing on the language of the statute at issue, particularly the word "a" in prefacing the word "firearm," we held that use of the term "`a firearm' ... clearly shows that the legislature intended to make each firearm a separate unit of prosecution." 450 So.2d at 482. In so holding, we recognized that federal courts have held that use of the word "any," on the other hand, renders the meaning of the statute ambiguous, and in that instance, "several firearms taken at the same time must be treated as a single offense." Id. (citing United States v. Rosenbarger, 536 F.2d 715 (6th Cir.1976), and United States v. Kinsley, 518 F.2d 665 (8th Cir.1975)). Thus, we acknowledged a critical difference between the use of the words "a" and "any" in construing the legislative intent of a statute.
In Watts we followed the reasoning and analysis in Grappin. In Watts, the defendant was charged with two counts of possessing two prison-made knives at the same time. The statute made it unlawful for any person to "introduce" or "possess" while upon the grounds of any state correctional institution "any firearm or weapon of any kind." Watts, 462 So.2d at 814 (quoting § 944.47, Fla. Stat. (1981)). In interpreting the language of the *1179 statute, we recognized the ambiguity in the legislature's use of the language "any firearm or weapon." Id. In accordance with our decision in Grappin, we concluded that such ambiguity required construction of the statute most favorably for the accused and that such a favorable construction prohibited Watts from being convicted of multiple offenses for the possession of two prison-made knives.[5]Id. The meaning of Watts is clear; although Watts possessed two knives, he was subject to only one conviction under an ambiguous statute, absent a clearer statement of legislative intent to the contrary.

SIMILAR FEDERAL STATUTE
The United States Supreme Court has reached a result similar to that reached in Pierce and consistent with our opinions in Grappin and Watts, in construing the federal statutory equivalent to the statute in this case, 18 U.S.C.A. § 111 (Supp.1998) (formerly 18 U.S.C. § 254 (1946) (assault or interference with a federal officer)). In Ladner v. United States, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958), the defendant was convicted of two counts of assault upon federal officers in violation of 18 U.S.C. § 254 (1940) when he fired a shotgun at two officers while they were seated in their automobile. Similar to the statute at issue in the instant case, section 254 provided: "`Whoever shall forcibly resist, oppose, impede, intimidate, or interfere with any person ... [if he is a federal officer designated in § 253] while engaged in the performance of his official duties, or shall assault him on account of the performance of his official duties, shall be ... imprisoned not more than three years.....'" 358 U.S. at 171 n. 1, 79 S.Ct. 209 (quoting 18 U.S.C. § 254 (1940)) (emphasis supplied). In concluding that only one conviction under section 254 was permitted, the Court reasoned that to permit as many offenses as there are federal officers affected "would produce incongruous results" because the cumulative punishment imposed would be disproportionate to the actual crime committed. 358 U.S. at 177, 79 S.Ct. 209.
In analyzing the intent of the statute, the Court found it susceptible to two equally plausible constructions with regard to the purpose the statute was intended to achieve: preventing hindrance of the government and protection of individual officers. Id. at 173, 79 S.Ct. 209. In support of the view that the statute's primary purpose was to prevent the hindrance of government duty, and not to prevent assault upon federal officers, the court stated:[6]
[Section] 254 makes it unlawful not only to assault federal officers engaged on official duty but also forcibly to resist, oppose, impede, intimidate or interfere with such officers. Clearly one may resist, oppose, or impede the officers or interfere with the performance of their duties without placing them in personal danger. Such a congressional aim would, of course, be served by considering the act of hindrance as the unit of prosecution without regard to the number of federal officers affected by the act. For example, the locking of the door of a building to prevent the entry of officers intending to arrest a person within would be an act of hindrance denounced by the statute. We cannot find clearly from the statute, even when read in the light of its legislative history, that the Congress intended that the person locking the door might commit as many crimes as there are officers denied entry. And if we cannot find this meaning in the supposed case, we *1180 cannot find that Congress intended that a single act of assault affecting two officers constitutes two offenses under the statute.
Id. at 176, 79 S.Ct. 209. Because the meaning of the statute could not be discerned from the wording of the statute or its legislative history, the Court construed the statute in favor of the accused individual: "(W)hen choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite. We should not derive criminal outlawry from some ambiguous implication." United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 221-222, 73 S.Ct. 227, 97 L.Ed. 260. And in Bell v. United States, 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905, the Court expressed this policy as follows: "When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.
Id. at 177-78, 79 S.Ct. 209 (citations omitted). Other courts have similarly found that the use of the plural adjective "any" in connection with a singular noun or pronoun (i.e., officer, firearm, etc.) typically renders the meaning of a statute ambiguous. See United States v. Coiro, 922 F.2d 1008, 1014 (2d Cir.1991); Kinsley, 518 F.2d at 667-68; United States v. Deaton, 468 F.2d 541, 546 (5th Cir.1972).
This Court's prior holdings in Grappin and Watts and the First District's holding in Pierce are consistent with the U.S. Supreme Court's opinion in Ladner and the federal circuit decisions cited above. Here, as in those cases, the use of the phrase "any officer" in section 843.01 renders the statute in question ambiguous. Indeed, chapter 843 is entitled "obstructing justice" which, as the Supreme Court concluded in Ladner, indicates a concern over the obstruction of justice by resisting arrest and not just the physical protection of law enforcement officers.[7] Indeed, section 843.01 specifically focuses on someone who "resists, obstructs, or opposes any officer" in the execution of any legal duty. At the very least, under the analysis in the cases set out above, the language and purpose of the statute is ambiguous and susceptible to different interpretations. And, of course, both this Court and the legislature have mandated that criminal statutes be strictly construed most favorably to the accused. See § 775.021(1), Fla. Stat. (1993); Perkins v. State, 576 So.2d 1310, 1312 (Fla.1991); State ex rel. Lee v. Buchanan, 191 So.2d 33, 36 (Fla.1966). Accordingly, absent a clearer statement of legislative intent to the contrary, this Court must apply the same analysis as we did in Watts, and as the U.S. Supreme Court did in Ladner.
As noted above, the Ladner Court concluded that allowing as many charges as there were officers threatened or resisted in a single incident could produce absurd results. Indeed, the petitioner has similarly warned of the absurd consequences that potentially could flow from a contrary construction of the statute here:
[D]efining the unit of prosecution by the number of officers involved in executing the legal duty would lead to an absurd result. Imagine an armed individual waiving his gun in the direction of the 100 officers unsuccessfully attempting to induce his surrender. Or imagine the motorist who continues driving despite an order to pull-over, resulting in a chase involving 100 squad cars, each occupied by two officers. Is it reasonable to believe that the legislature contemplated the single acts of resistance to constitute 100 counts of resisting an officer with violence and 200 counts of resisting an officer without violence?
Petitioner's Reply Brief on the Merits at 8 n. 3. We note that if multiple prosecutions were allowed, a defendant could be prosecuted for numerous other charges such as aggravated *1181 assault and aggravated battery upon a police officer as was Wallace here, in addition to an endless number of counts of resisting simply depending upon the number of officers present. We do not believe the legislature intended such consequences. While the defendant may have committed more than one offense in his altercation with the officers, including possibly multiple assaults or batteries, or both, on law enforcement officers as were separately charged here, we conclude that his continuous resistance to the ongoing attempt to effect his arrest constitutes a single instance of obstruction under section 843.01. Of course, our opinion does not affect Wallace's convictions for the other offenses arising out of the same altercation.
Accordingly, we quash Wallace and approve Pierce.
It is so ordered.
SHAW, KOGAN, ANSTEAD and PARIENTE, JJ., concur.
HARDING, C.J., dissents with an opinion, in which OVERTON and WELLS, JJ., concur.
HARDING, C.J., dissenting.
I dissent because I conclude that the statute, read as a whole, reveals clear legislative intent that the allowable unit of prosecution is each officer resisted. The statute reads:
843.01. Resisting officer with violence to his person.
Whoever knowingly and willfully resists, obstructs, or opposes any officer as defined in s. 943.10(1), (2), (3), (6), (7), (8), or (9); member of the Parole Commission or any administrative aide or supervisor employed by the commission; parole and probation supervisor; county probation officer; personnel or representative of the Department of Law Enforcement; or other person legally authorized to execute process in the execution of legal process or in the lawful execution of any legal duty, by offering or doing violence to the person of such officer or legally authorized person, is guilty of a felony of the third degree....
While simple application of the "a/any" test set out in Grappin and Watts, without a complete reading of the statute, may suggest that this section is ambiguous as to the allowable unit of prosecution, a full and plain reading of the statute shows that it clearly prohibits violently resisting the officer, rather than the arrest. The phrase "any officer" must be read with the subsequent singular reference to "the person of such officer." Because the statute read as a whole is unambiguous, I would hold that the allowable unit of prosecution under section 843.01 is each individual officer resisted with violence and that the statute permits multiple charges and convictions when a suspect resists multiple officers in an attempt to effect a single arrest. Accordingly, I would approve the decision below and disapprove Pierce v. State, 681 So.2d 873 (Fla. 1st DCA 1996).
OVERTON and WELLS, JJ., concur.
NOTES
[1] The Fourth District's opinion notes:

The defendant was initially charged with [two counts of] battery on a law enforcement officer, aggravated assault on a law enforcement officer, and aggravated battery. Following jury selection, defendant was granted a continuance to locate witnesses. After the continuance was granted, the State amended the information to add two counts of battery on a law enforcement officer, and two counts of resisting an officer with violence.
The trial court denied a defense motion to dismiss the additional counts on grounds of prosecutorial vindictiveness, and the case thus proceeded to trial on the amended information. At the conclusion of the State's case, the trial court reserved ruling on defendant's motion for a judgment of acquittal on all counts. The State then proceeded to nolle prosse the two counts of battery on a law enforcement officer. The remaining charges were submitted to the jury, and the defendant was found guilty on all six.
Wallace, 689 So.2d at 1160.
[2] Section 843.01 provides:

843.01 Resisting officer with violence to his person.Whoever knowingly and willfully resists, obstructs, or opposes any officer as defined in s. 943.10(1), (2), (3), (6), (7), (8), or (9); member of the Parole Commission or any administrative aide or supervisor employed by the commission; parole and probation supervisor; county probation officer; personnel or representative of the Department of Law Enforcement; or other person legally authorized to execute process in the execution of legal process or in the lawful execution of any legal duty, by offering or doing violence to the person of such officer or legally authorized person, is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
[3] See supra note 1.
[4] That the Wallace decision conflicts with our prior decisions in Watts and Grappin v. State, 450 So.2d 480 (Fla.1984), is made clear in a recent analysis of the issue by Judge Webster of the First District:

In Pierce v. State, 681 So.2d 873 (Fla. 1st DCA 1996), this court held that multiple convictions for resisting an officer with violence in violation of section 843.01, Florida Statutes, which all arose during a single incident were precluded by the double jeopardy clause because that statute prohibits resisting, obstructing or opposing "any officer." We reached that conclusion by applying the Grappin/Watts "a/any test." In Wallace, the Fourth District affirmed convictions for two counts of resisting an officer with violence, notwithstanding the fact that both charges arose out of a single incident during which two different officers were involved. In a lengthy opinion, the Wallace court noted its disagreement with Pierce, apparently because it believed that, as used in section 843.01, "any does not define the `allowable unit of prosecution'merely the class of officers to whom the statute's protection is intended." 689 So.2d at 1163. Apparently for the same reason, the court was able to distinguish and, thereby, to avoid what would have otherwise been its obligation to follow Grappin and Watts. See Hoffman v. Jones, 280 So.2d 431 (Fla.1973) (district courts of appeal may state their reasons for advocating that the supreme court recede from established precedent, but are bound to follow such precedent until overruled). In dicta, the Wallace court suggests that the legislature's adoption in 1988 of section 775.021(4)(b), Florida Statutes, had effectively overruled the holdings in Grappin and Watts. 689 So.2d at 1162-63. The state here relies on that dicta to support its argument that the Grappin/Watts "a/any test" is no longer good law.
....
It seems to us that section 775.021(4)(b) was intended merely to make clear that multiple punishments are to be imposed for separate offenses regardless of whether they all arose out of a single act. We fail to see how that amendment has any bearing on questions such as that posed by this appealwhat the legislature intends the proper unit of prosecution to be when it uses ambiguous language, i.e., whether the language used is intended to make multiple acts occurring at the same time one offense or separate offenses. Accordingly, we do not agree that the adoption of section 775.021(4)(b) has any bearing on the continued vitality of the Grappin/Watts "a/any test" as a means by which to arrive at an answer to such questions.
Hill v. State, 711 So.2d 1221, 1223-24 (Fla. 1st DCA 1998).
[5] Although this Court approved the district court's decision in Watts v. State, 440 So.2d 505 (Fla. 1st DCA 1983), on different grounds, the district court aptly noted:

[D]istinguishing single from multiple units of prosecution is a matter for the legislature, not for adroit prosecutors or for wondering courts. Legislation defining crimes must therefore be read as strictly and as narrowly as reasonably possible, avoiding multiple charges for coterminous conduct unless the legislature's contrary purpose is clear.... This skeptical view of multiple prosecutions merely reinforces traditional judicial attitudes toward the construction of criminal statutes.
Id. at 511.
[6] The Supreme Court, in United States v. Feola, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975), effectively limited the holding in Ladner to the facts in its case. In doing so, the Court gave weight to both purposes of the statute instead of choosing one interpretation over the other. However, Feola did not involve a "unit of prosecution" issue but, rather, focused on whether conviction under section 254 requires knowledge of the federal officer's identity.
[7] As noted earlier, Wallace was also charged and convicted of multiple counts of battery as well as assault upon a police officer based upon the same conduct underlying the alleged violation of section 843.01.