**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SYED AUN ABBAS BUKHARI | : | |
| | : | |
| Appellant | : | No. 747 MDA 2025 |

Appeal from the Judgment of Sentence Entered May 28, 2025
In the Court of Common Pleas of Franklin County Criminal Division at
No(s): CP-28-CR-0000587-2024

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:         **FILED: DECEMBER 17, 2025**

Syed Aun Abbas Bukhari (Appellant) appeals from the judgment of sentence imposed following his conviction by the trial court of one count each of fleeing or attempting to elude a police officer (3rd degree felony) (fleeing or eluding), and driving without lights to avoid detection.[1] Appellant challenges the denial of his motion to quash the instant Franklin County, Pennsylvania, prosecution as violating his constitutional protection against double jeopardy. After careful consideration, we affirm.

The trial court summarized the facts underlying the instant appeal as follows:

> This matter concerns [Appellant] leading [Pennsylvania State Police (PSP) troopers] on a high speed chase through Franklin County … and into other counties. On November 20, 2023,

---

[1] 75 Pa.C.S.A. §§ 3733(a), 3734.

> Appellant drove through a stop light with a "rolling stop" in Chambersburg, [Franklin County,] Pennsylvania, in front of [PSP] Trooper Jason Brindle (hereinafter Trooper Brindle) and Trooper Lucas Amarose (hereinafter Trooper Amarose). [Troopers Brindle and Amarose are stationed at the PSP barracks in Chambersburg]. Appellant sped onto Interstate 81 at exit 16 and turned his lights off, and Trooper Brindle and Trooper Amarose followed Appellant onto Interstate 81, where they lost sight of him.
>
> Trooper Bindle and Trooper Amarose informed the PSP dispatcher about the chase. [PSP] Corporal Herman Hofacker [(Corporal Hofacker), who was stationed at the PSP barracks in [Chambersburg, Franklin County,] was entering Interstate 81 northbound at exit 20 when he observed the Appellant speeding past the exit. [Corporal] Hofacker turned on his emergency lights and sirens and pursued Appellant at a speed in excess of 120 miles per hour. Appellant turned off his lights and [Corporal] Hofacker lost sight of him at mile marker 22.0.[2] [Appellant entered Cumberland County, where Carlisle [PSP troopers] then engaged Appellant near mile marker 30.0, and pursued Appellant until he was stopped north of Harrisburg with a [Precision Intervention Technique (PIT)] maneuver.

Trial Court Opinion, 7/17/25, at 1-2 (footnotes in original omitted; one footnote added; punctuation modified). On June 4, 2024, in Franklin County, the Commonwealth charged Appellant, by criminal information, with the above-described offenses, as well as with an additional count of driving without lights to avoid detection, and one count of driving at a safe speed.[3]

---

[2] At trial, Corporal Hofacker testified that he deactivated his lights and siren at mile marker 23. N.T., 4/10/25, at 30.

[3] 75 Pa.C.S.A. §§ 3734, 3361.

- 2 -

On August 16, 2024, in Cumberland County, Appellant pled guilty to fleeing or eluding and was sentenced for the police chase involving the Carlisle PSP.[4]

The trial court described what next transpired:

[Appellant] filed a motion to quash [the Franklin County] criminal information [(motion to quash)], which argued that [Appellant] was charged twice for the same act.[5] [The trial court] held an evidentiary hearing on January 9, 2025. On January 14, 2025, [the court] denied [Appellant's] motion to quash.

… [The trial court] held a bench trial on April 10, 2025, and found [Appellant] guilty of [fleeing or eluding] … as a third degree felony, and one count of driving without lights to avoid detection. On May 28, 2025, [the trial court] sentenced [Appellant] to 36 months of probation, along with court costs, fines and fees.

*Id.* at 3-4 (original footnotes omitted; one footnote added; capitalization and punctuation modified). Appellant timely filed a notice of appeal. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issue for our review:

Did the trial court err[] in its order of January 14, 2025[,] by denying [] Appellant's motion to quash due to a violation of his protections against double jeopardy?

Appellant's Brief at 4 (capitalization modified).

---

[4] Appellant's Cumberland County sentence is not apparent from the certified record.

[5] Appellant argued that because he pled guilty to fleeing or eluding in Cumberland County, his Franklin County charge for the same offense violated his constitutional protection against double jeopardy. Motion to Quash, 12/5/24, ¶¶ 8-14.

Appellant argues that Franklin and Cumberland Counties are "part of a unified, state judicial system[,]" "whose power and authority are derived from a single source." *Id.* at 6. Appellant asserts that the

> various courts of common pleas of this Commonwealth are judicial arms of a single sovereign for double jeopardy purposes and, as such, are barred from separately prosecuting an accused for a single criminal act.

*Id.* (citations omitted).

Appellant claims that his conviction of fleeing or eluding in Cumberland County is for "the exact same act that resulted in charges in Franklin County." *Id.* at 7. Appellant contends that, although the PSP troopers lost sight of Appellant's vehicle for a short time, the single criminal episode continued. *Id.* According to Appellant, he cannot be punished twice for the same crime resulting from the same act, *i.e.*, a high speed chase. *Id.* at 8.

Appellant disagrees with the Commonwealth's assertion that there were two separate criminal acts: his flight from the Chambersburg PSP in Franklin County (Corporal Hofacker), and his flight from the Carlisle PSP in Cumberland County . *Id.* Appellant claims that the PSP barracks in each county were in communication with each other and worked in concert. *Id.* According to Appellant, his fleeing or eluding "was clearly one criminal episode, regardless of how law enforcement reacted." *Id.*

Appellant compares our unpublished memorandum in *Commonwealth v. Copenhaver*, 264 A.3d 352, 128 MDA 2021 (Pa. Super. filed Sept. 9, 2021)

(unpublished memorandum),[6] which approved separate prosecutions, with the circumstances presented herein. In **Copenhaver**, Appellant argues, this Court upheld prosecutions where the appellant

> escaped from the initial pursuit, stopped at the home of a friend, had a conversation and a short time later was spotted by a different officer[,] who engaged [the defendant] in another chase. A panel of the Superior Court found that trial counsel was not ineffective for failing to move to quash the second information on double jeopardy grounds.

Appellant's Brief at 8. In this case, Appellant asserts that he

> was traveling at 120 miles an hour, meaning he covered the 8 miles between losing [the] Chambersburg [PSP] and engaging [the] Carlisle [PSP], in less than five minutes as he continued the admittedly criminal episode.

**Id.**[7]

The Commonwealth disagrees, arguing that Appellant was involved in two separate and distinct criminal episodes of fleeing or eluding. Commonwealth's Brief at 10. The Commonwealth points out Corporal Hofacker's testimony that, while pursuing Appellant in Cumberland County, he lost sight of Appellant's vehicle shortly after mile marker 23. **Id.** at 11. At that time, Corporal Hofacker terminated his pursuit. **Id.** The Commonwealth

---

[6] **See** Pa.R.A.P. 126(b) (providing that unpublished non-precedential memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

[7] Appellant does not allege a violation of the compulsory joinder rule as a basis for relief. **See** 18 Pa.C.S.A. § 110 (requiring a single trial where the incidents may be properly characterized as a single criminal episode).

acknowledges that Chambersburg PSP relayed information about the pursuit to the Carlisle PSP by telephone, although the Carlisle PSP could "pick up" the radio traffic from the Chambersburg PSP. *Id.* The Commonwealth disputes Appellant's reliance on *Copenhaver*, arguing that while not "completely analogous," the circumstances here reflect that Appellant was "involved in two separate and distinct criminal episodes." *Id.* at 10.

In addressing Appellant's issue, we are cognizant of our standard and scope of review:

> An appeal grounded in double jeopardy raises a question of constitutional law. This [C]ourt's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is *de novo*. To the extent that the factual findings of the trial court impact its double jeopardy ruling, we apply a more deferential standard of review to those findings.

*Commonwealth v. Krista*, 271 A.3d 465, 468 (Pa. Super. 2022) (citation omitted).

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution "protects against a second prosecution for the same offense after an acquittal, a second prosecution for the same offense after a conviction[,] and multiple punishments for the same offense."[8]

---

[8] The Double Jeopardy Clause has been made applicable to the states through the Fourteenth Amendment. *Commonwealth v. Frisbie*, 485 A.2d 1098, 1100 (Pa. 1984).

*Commonwealth v. Young*, 35 A.3d 54, 59 (Pa. Super. 2011) (internal citation and quotation marks omitted).

> The double jeopardy provision does not restrain the legislature in its role in defining crimes and fixing penalties. Its intendment is to prevent courts from imposing more than one punishment under the legislative enactment and restraining prosecutors from attempting to secure that punishment in more than one trial. Where consecutive sentences are imposed at a single trial, double jeopardy prevents the court from exceeding its legislative authorization by imposing multiple punishments for the "same offense."

*Frisbie*, 485 A.2d at 1100; *accord Commonwealth v. Sheets*, 302 A.3d 145, 152-53 (Pa. Super. 2023).  The Double Jeopardy Clause "requires a prosecutor to bring, in a single proceeding, all known charges against a defendant arising from a 'single criminal episode.'"[9]  *Commonwealth v. Perfetto*, 207 A.3d 812, 814 (Pa. 2019) (citation omitted).

> As our Supreme Court recently explained,

> [T]he *actus reus*, or unit of prosecution, is the conduct that the General Assembly intends to punish.  Stated another way, it is the minimum conduct that must be proven in order to obtain a conviction under a particular statute.  In determining the correct unit of prosecution for a particular statute, "the inquiry should focus on whether separate and distinct prohibited acts … have been committed.  [*Commonwealth v.*] *Satterfield*, 255 A.3d[, 438,] 446 [(Pa. 2021)] (citation omitted).

---

[9] In determining whether acts are part of a single criminal episode, "the Court must consider the temporal sequence of events and the logical relationship between the acts."  *Commonwealth v. Johnson*, 517 A.2d 1311, 1314 (Pa. Super. 1986).

***Commonwealth v. Smith***, 15 WAP 2024, \_\_\_ A.3d \_\_\_ (Pa. filed Nov. 19, 2025) (slip op. at 14).  Further,

> as the Pennsylvania Supreme Court has held: "[w]hen a criminal act has been committed, broken off, and then resumed, at least two crimes have occurred and sentences may be imposed for each…."  ***Commonwealth v. Belsar***, … 676 A.2d 632, 634 (Pa. 1996).

***Sheets***, 302 A.3d at 153.

In determining whether Appellant's Franklin County prosecution violated Appellant's protection against double jeopardy, we must determine what our General Assembly determined to be the "unit of prosecution" for a violation of 75 Pa.C.S.A. § 3733(a).

> The unit of prosecution is the *actus reus* that the General Assembly intended to punish.  Put otherwise, **the unit of prosecution is the minimum conduct that must be proven to obtain a conviction for the statute in question**.  Only a single conviction and resulting punishment may be imposed for a single unit of prosecution.  As [the Pennsylvania Supreme] Court has indicated, "[t]**o determine the correct unit of prosecution, the inquiry should focus on whether separate and distinct prohibited acts** … **have been committed**."  ***…. Davidson***, … 938 A.2d [at] 216 ….

***Commonwealth v. Satterfield***, 255 A.3d 438, 445-46 (Pa. 2021).

"To determine the intended unit of prosecution, we must engage in statutory interpretation."[10]  ***Id.*** at 446.

---

[10] Statutory interpretation is a question of law; therefore, our standard of review is *de novo*, and our scope of review is plenary.  ***Commonwealth v. Hall***, 80 A.3d 1204, 1211 (Pa. 2013); ***accord Commonwealth v. Torres-Kuilan***, 156 A.3d 1229, 1231 (Pa. Super. 2017).

The best expression of legislative intent appears in the plain language of a statute. ***Commonwealth v. Peck***, 242 A.3d 1274, 1279 (Pa. 2020) (citation omitted). Words of a statute "shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa.C.S. § 1903(a). "[W]hen the words of a statute are clear and unambiguous, there is no need to look beyond the plain meaning of the statute under the pretext of pursuing its spirit." ***Commonwealth v. Brown***, … 981 A.2d 893, 897 (Pa. 2009).

***Satterfield***, 255 A.3d at 446. With this in mind, we consider the language of the statute at issue.

The Motor Vehicle Code defines fleeing or eluding, in relevant part, as follows:

**(a) *Offense defined.*—**Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop, commits an offense as graded in subsection (a.2).

\* \* \*

**(a.2) *Grading.***

\* \* \*

**(2)** An offense under subsection (a) constitutes a felony of the third degree if the driver while fleeing or attempting to elude a police officer does any of the following:

\* \* \*

**(iii)** endangers a law enforcement officer or member of the general public due to the driver engaging in a high-speed chase.

- 9 -

75 Pa.C.S.A. § 3733(a), (a.2). In interpreting Section 3733, we are guided by our decisions in **Commonwealth v. Scattone**, 672 A.2d 345 (Pa. Super. 1996), and **Commonwealth v. Wise**, 171 A.3d 784 (Pa. Super. 2017).

In **Scattone**, at around 1:45 a.m., Doylestown Police Officer James Boettger (Officer Boettger) observed a stopped blue Ford Mustang approximately fifty yards from an intersection. **Scattone**, 672 A.2d at 346. As Officer Boettger approached the Mustang, a woman standing by the car motioned for him to stop. **Id.** After conversing with the woman, Officer Boettger pulled his vehicle behind the Mustang. **Id.** The defendant, who was in the driver's seat of the Mustang, started the vehicle and drove away. **Id.** Officer Boettger followed the defendant, activating his emergency lights and intermittently activating his siren. **Id.** A police chase ensued, during which four other police vehicles joined the pursuit. **Id.** Officer Boettger subsequently terminated the pursuit, after obtaining information sufficient to identify the defendant as the Mustang's driver. **Id.**

The defendant was subsequently convicted of fleeing or eluding. **Id.** On appeal, the defendant challenged the sufficiency of the evidence, arguing the Commonwealth failed to establish that probable cause existed before initiating and maintaining pursuit of his vehicle. **Id.** In examining the plain language of the statute, a panel of this Court concluded that Section 3733(a) is unambiguous and clear:

> Generally, it is not a crime (*malum in se*) to operate a vehicle and refuse to stop when directed to do so. **However, the act of**

**avoiding police direction to stop has been criminalized** (*malum in prohibitum*) by the Legislature without the additional condition that the police have probable cause to act prior to directing a stop or initiating a chase. …

….

… **The statute is clear and unambiguous on its face as to the elements necessary to trigger its violation: an operator's "willful" failure to bring his/her vehicle to a stop in the face of an audibly or visually identifiable police officer's signal to do so.**

*Id.* at 347 (emphases added).

In *Wise*, a panel of this Court again interpreted Section 3733(a). In that case, Southwestern Regional Police Officer Holly Rowland (Officer Rowland), while investigating a minor automobile accident, observed the defendant driving a green Ford Mustang. *Wise*, 171 A.3d at 785. Officer Rowland advanced towards the defendant's vehicle, as the Mustang approached the intersection near the accident scene. *Id.* Officer Rowland then informed the defendant that she knew the defendant lacked a valid driver's license, and instructed the defendant to pull into a nearby driveway. *Id.* The defendant did not follow Officer Rowland's directive. *Id.* Instead, the defendant "accelerated at a very fast speed out of the area[,] and did not stop at any point, which was [contrary to] the directions Officer Rowland had given." *Id.* at 787. Officer Rowland notified police dispatch that the defendant had fled the scene. *Id.*

The defendant subsequently was arrested, tried, and convicted by a jury of fleeing or eluding. *Id.* at 788. On appeal, the defendant challenged the

trial court's jury instruction on fleeing or eluding. *Id.* The defendant argued, "there is a requirement of pursuit in order to find *eluding* a police officer[,] but not for *fleeing* from a police officer." *Id.* (emphasis added). The defendant argued that the statute's absence of a comma after the phrase, "or whoever flees" compels interpreting Section 3733(a) as requiring "a pursuing police officer, regardless of whether a motorist flees or attempts to elude the police." *Id.* (internal quotation marks omitted). A panel of this Court rejected the defendant's argument, again concluding that the statute's language is clear:

> Examining the language of the statute, we conclude it is clear that any driver
>
> 1) who willfully fails or refuses to stop, **or**
>
> 2) who otherwise flees **or**
>
> 3) attempts to elude a pursuing police officer
>
> when given a visual and audible signal to stop, commits the offense.

*Id.* at 789 (emphasis in original; footnote omitted). Thus, this Court recognized the statue is clear and unambiguous on its face as to the elements necessary to trigger its violation: "an operator's 'willful' failure to bring his/her vehicle to a stop in the face of an audibly or visually identifiable police officer's signal to do so." *Id.* at 790 (quoting *Scattone*, 672 A.2d at 347).

> The word "or" is used exclusively in the statute in explaining the behavior proscribed. The word "or" is given its normal disjunctive meaning unless it produces an unreasonable result. *Commonwealth v. Lopez*, … 663 A.2d 746 (Pa. Super. 1995); 1

Pa.C.S. § 1903(a). Giving "or" its usual disjunctive meaning in this case does not produce an unreasonable result. Indeed, the statute makes clear, that upon a visual and audible signal to stop by a police officer, a driver who fails or refuses to stop, **or** flees, **or** attempts to elude a pursing officer, commits the offense.

***Wise***, 171 A.3d at 790 (emphasis in original).

Based upon the foregoing, we conclude that the unit of prosecution for fleeing or eluding requires a police officer's visual or audible signal to stop, followed by a person's (a) failure or refusal to stop; or (b) flight; or (c) attempt to elude the pursuing officer. ***See id.*** With this in mind, we look to the evidence presented against Appellant in Franklin County, as well as his guilty plea in Cumberland County.

At trial, Trooper Amarose testified that during the overnight hours between November 19, 2023, and November 20, 2023, while on routine patrol in Franklin County, he observed a red BMW with a New Jersey registration "at the intersection of State Route 30 and Falling Spring Road in Franklin County." N.T., 4/10/25, at 6. Trooper Amarose observed that the BMW entered the intersection to turn left onto Route 30, "stopped at that point[,] and then continued slowly driving onto Route 30." ***Id.*** at 6-7. Trooper Amarose and his partner, Trooper Brindle, began to slowly follow the BMW. ***Id.*** at 7. The BMW then "accelerated at a high rate of speed onto Interstate 81." ***Id.*** According to Trooper Amarose, the BMW "accelerated in speeds of [*sic*] excess of 120 miles an hour." ***Id.*** at 9. Almost immediately thereafter, the BMW turned off its lights. ***Id.*** at 10.

- 13 -

Trooper Amarose "called out the license plate information [for the BMW] over the radio to put it out to other cars out on the road." *Id.* at 9. Trooper Amarose explained that the police communications office (PCO) then relays that information to all PSP vehicles on the road. *Id.* at 11. **Trooper Amarose did not activate his lights and siren.** *Id.* at 12. Thus, Appellant did not commit the crime of fleeing or eluding as to this incident, as Appellant was not "given a visual and audible signal to bring the vehicle to a stop[,]" as required by Section 3733(a). *See* 75 Pa.C.S.A. § 3733(a).

Corporal Hofacker, from the Chambersburg PSP in Franklin County, testified that during the early morning hours of November 20, 2023, he heard a police dispatch indicating that Troopers Amarose and Brindle

> were following a red BMW that turned its lights out and that it was traveling north on Interstate 81. And then they got on at Exit 16 and they were moving at a high rate of speed.
>
> And I indicated over the radio that I was at Exit 20 nearby, stationary at the time for a red light, whenever that came about.
>
> ….
>
> … When the call came through I proceeded. As [Troopers Amarose and Brindle] indicated, [the red BMW] was traveling northbound [and had a] New Jersey registration, … and it turned its lights off traveling at a high rate of speed.
>
> … And as I was at [the entrance to I-81,] I looked to my left, which would have been out of the purview of my front MVR camera, I saw the red BMW with its lights on traveling at an extremely high rate of speed, driving past that exit.
>
> And as I made my left, I was going around that slow turn, **I initiated my emergency lights as I was getting on the on- ramp.** And by the time I got on the on-ramp, the red BMW had

- 14 -

> turned its lights off again a second time …. It was traveling at a high rate of speed such that I could only see a silhouette….

*Id.* at 21-22 (emphasis added). Corporal Hofacker clarified that the BMW turned off its lights about two to three seconds after he activated his lights and sirens. *Id.* at 22.

Corporal Hofacker further testified that "there was other traffic [further] ahead with their headlights and their taillights on in the right-hand lane." *Id.* at 25. According to Corporal Hofacker, the BMW was in the passing lane. *Id.* Corporal Hofacker indicated that the BMW "went clear past the overpass over the hill. I went up over the hill and I could not see that vehicle. I couldn't tell if [the BMW] got off at Exit 24 or if he kept going." *Id.* After the BMW left Corporal Hofacker's field of vision, he radioed this information to PCO. *Id.* at 26. **At that time, Corporal Hofacker shut off his lights and ended his pursuit of the BMW.** *Id.* at 25, 31. The pursuit ended at approximately mile marker 23.[11] *Id.* at 30.

Applying the plain language of Section 3733(a), at the time Corporal Hofacker ended his pursuit, Appellant had completed a unit of prosecution for fleeing or eluding. After Corporal Hofacker activated his lights and siren, Appellant (a) failed or refused to stop; or (b) fled; or (b) attempted to elude

---

[11] In his motion to quash the Franklin County criminal information, Appellant confirmed that Corporal Hofacker lost sight of Appellant at I-81 mile marker 23. Motion to Quash Information, 12/5/24, ¶ 5.

Corporal Hofacker in Franklin County.[12]  75 Pa.C.S.A. § 3733(a).  Contrary to Appellant's argument, there was no ongoing pursuit of Appellant from mile marker 23 through mile marker 30.

Although Appellant's subsequent fleeing or eluding in Cumberland County is temporally close in time and location, we conclude it constituted a separate unit of prosecution/offense for purposes of double jeopardy.  In his motion to quash, Appellant averred that Carlisle PSP troopers engaged Appellant at I-81 mile marker 30, pursued Appellant as he fled, and ultimately stopped Appellant using a PIT maneuver, as Appellant entered the Pennsylvania Turnpike.  Motion to Quash Information, 12/5/24, ¶ 6.  Thus, at a time when there was no ongoing pursuit of Appellant (mile marker 30), Carlisle PSP activated their lights and sirens, after which Appellant (a) failed or refused to stop; or (b) fled; or (c) attempted to elude the Carlisle PSP.  ***See*** 75 Pa.C.S.A. § 3733(a).

Based on the record before us, and the clear and unambiguous language of Section 3733(a), we conclude that the Cumberland County charges arose as a result of Appellant's second, separate violation of Section 3733.  ***See*** ***Wise***, 171 A.3d at 790.  In reaching this conclusion, we are cognizant of the

---

[12] The Commonwealth established that Appellant's actions endangered Corporal Hofacker and members of the general public on the highway "due to the driver engaging in a high[]speed chase."  75 Pa.C.S.A.  § 3733(a.1).

- 16 -

Commonwealth's citation to the Colorado Court of Appeals' decision in *People v. McMinn*, 412 P.3d 551 (Colo. App. 2013). Commonwealth's Brief at 12.

In *McMinn*, police engaged in an 18-minute pursuit of the defendant's vehicle. *Id.* at 556. During the 18-minute chase, the "primary" pursuing officer changed multiple times. *Id.* For example, when one officer unsuccessfully tried to perform a maneuver to immobilize the defendant's vehicle, another officer took the primary position behind the defendant. *Id.* As a result, four different officers took the "primary" position during the pursuit. *Id.* The prosecution charged the defendant with, and tried him on, four counts of vehicular eluding.[13] *Id.* On appeal, the defendant challenged his multiple prosecutions for fleeing or eluding as violative of the constitutional protection against double jeopardy. *Id.* at 557.

---

[13] The offense of eluding a police officer is defined by the Colorado statute as follows:

> Any operator of a motor vehicle who the officer has reasonable grounds to believe has violated a state law or municipal ordinance, who has received a visual or audible signal such as a red light or a siren from a police officer driving a marked vehicle showing the same to be an official police, sheriff, or Colorado state patrol car directing the operator to bring the operator's vehicle to a stop, and who willfully increases his or her speed or extinguishes his or her lights in an attempt to elude such police officer, or willfully attempts in any other manner to elude the police officer, or does elude such police officer commits a class 2 misdemeanor traffic offense.

§ 42-4-1413, C.R.S. 2012.

The Colorado Court of Appeals ultimately concluded that the statute "plainly contemplates a particular volitional act against a particular officer." *Id.* at 558. However, the Colorado court cautioned,

> **the unit of prosecution for vehicular eluding must be defined not in terms of the number of officers involved, but in terms of discrete volitional acts of eluding that have endangered the public.** Indeed, as various other jurisdictions have observed in construing similar statutes, any other interpretation could lead to absurd results. *See, e.g., Wallace v. State*, 724 So. 2d 1176, 1180-81 (Fla. 1998) (noting that allowing as many charges as there were officers involved in a single incident could produce absurd results, as, for example, in the case of a motorist who continues driving despite an order to pull over, resulting in a chase involving one hundred squad cars); *accord Purnell v. State*, 375 Md. 678, 827 A.2d 68, 83 (Md. 2003); *cf. State v. Good*, 851 S.W.2d 1, 6 (Mo. Ct. App. 1992) (noting that the gist of the offense of resisting arrest is not dependent on how many officers were attempting to arrest the defendant and thus concluding that the defendant's conduct in resisting two officers trying to arrest her resulted in just one offense).
>
> Accordingly, [the Colorado appeals court] conclude[s] that a defendant may be charged with multiple offenses of vehicular eluding arising from a single criminal episode when he or she has performed discrete acts of eluding one or more peace officers, each constituting a new volitional departure in the defendant's course of conduct….

*Id.* at 558-59 (emphasis added).[14]

Similarly, pursuant to 75 Pa.C.S.A. § 3733(a), a defendant in Pennsylvania may be charged with multiple offenses of fleeing or eluding,

---

[14] *See, contra, Foley v. Commonwealth*, 233 S.W.3d 734 (Ky. App. 2007) (concluding that where there was a single pursuit, without interruption, separate charges violated double jeopardy).

when he or she performs the discrete unit of prosecution as defined therein. We reiterate that Corporal Hofacker terminated his pursuit of Appellant at I-81 mile marker 23. Thus, Appellant completed the unit of prosecution necessary for fleeing or eluding by mile marker 23 in Franklin County. A new pursuit commenced in Cumberland County, upon the activation of lights and sirens by the Carlisle PSP. Appellant's conviction of fleeing or eluding in Cumberland County did not bar his prosecution for fleeing or eluding Corporal Hofacker in Franklin County. For this reason, Appellant's issue merits no relief, and we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/17/2025